No. 14-1003

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**v.**

**FRANK CAIRA,**

**Defendant-Appellant.**

_____

**On Appeal from the United States District Court for
the Northern District of Illinois
Case No.  08 CR 1052
Honorable Rebecca R. Pallmeyer, Judge Presiding**

_____

APPELLANT'S BRIEF AND REQUIRED APPENDIX

_____

Hannah Valdez Garst
*Attorney for Frank Caira*
Law Offices of Hannah Garst
2300 Barrington Rd.
Suite 140
Hoffman Estates, IL 60169
(773) 248-6504
hannahgarst@garstlaw.com

Oral Argument Requested

No. 14-1003

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**v.**

**FRANK CAIRA,**

**Defendant-Appellant.**

---

**On Appeal from the United States District Court for
the Northern District of Illinois
Case No. 08 CR 1052
Honorable Rebecca R. Pallmeyer, Judge Presiding**

---

DISCLOSURE STATEMENT

The undersigned, counsel for Defendant-Appellant Frank Caira, furnishes the following list in compliance with Circuit Rule 26.1:

1.      The full name of every party or amicus the attorneys represent in the case: Frank Caira.

2.      The names of all law firms whose partners or associates have appeared for a party in the district court or are expected to appear for the party in the case: Hannah Valdez Garst, Law Offices of Hannah Garst; Kent Carlson, Kent R. Carlson & Associates, P.C.; Alan Brunell; Jeffrey Fawell, Fawell & Associates; Jed Stone, Stone & Associates; Heather Winslow; Beau Brindley, Joshua Jack Jones, and Michael Thompson, The Law Offices of Beau Brindley; John Taylor and Elisabeth Pollock, Federal Defender Program.

3.      Said party is not a corporation

Dated: October 30, 2015          ___/s/ Hannah Valdez Garst_____

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................................. v

JURISDICTIONAL STATEMENT ...................................................................................... 1

ISSUES PRESENTED FOR REVIEW ................................................................................ 2

INTRODUCTION .................................................................................................................. 2

STATEMENT OF THE CASE ............................................................................................. 4

SUMMARY OF THE ARGUMENTS................................................................................. 12

ARGUMENTS ...................................................................................................................... 14

I. Warrantless seizure of Frank Caira's IP login history violated his Fourth Amendment rights, because he has a reasonable expectation of privacy in his location information. 14

    A.    Standard of Review ................................................................................................ 14

    B.    Legal Analysis ....................................................................................................... 15

    C.    The government violated Mr. Caira's reasonable expectation of privacy in his IP login history when it used an administrative subpoena to collect 73 days of location information. ...................................................................................................... 17

II. Mr. Caira had a reasonable expectation of privacy in his IP login information despite it being held by a third party, because he did not voluntarily turn over his location information or know that this information was being collected and stored..................... 28

    A.    Legal Background................................................................................................... 28

    B.    An expectation of privacy in an IP login history is reasonable even though the information is held by a third party. ............................................................................ 30

III. If this Court holds that the government violated Mr. Caira's Fourth Amendment rights when it obtained his IP login history without a warrant, all "fruits" of the unlawful search should be suppressed. .................................................................. 38

IV. Mr. Caira's sentence should be vacated and remanded for a full resentencing, because the district court failed to present what terms of supervised release it intended to impose and provide any reasoning why it intended to impose them. .......................... 39

    A.     Standard of Review ................................................. 39

    B.     Legal Principles ..................................................... 39

    C.     The district court erred when it ordered 13 standard conditions and 1 special condition of supervised release, because the court failed to provide any reason for imposing the conditions, pursuant to 18 U.S.C. § 3553(a). ........................................... 41

CONCLUSION ................................................................. 43

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7) ................................. 44

CIRCUIT RULE 31(e) CERTIFICATION ................................ 44

APPELLANT'S REQUIRED APPENDIX .............................. 45

CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30 ............................................. i

CERTIFICATE OF SERVICE ................................................ ii

APPENDIX ..................................................................... iii

# TABLE OF AUTHORITIES

**Cases**

*City of Ontario v. Quon*, 130 S.Ct. 2619 (2010) ....................................................... 25

*Commonwealth v. Augustine*, 4 N.E.3d 846 (Mass. 2014) ...................................... 24

*Commonwealth v. Melilli*, 555 A.2d 1254 (Pa. 1989) ................................................ 23

*Commonwealth v. Rousseau*, 990 N.E.2d 543 (Mass. 2013) .................................... 24

*Commonwealth v. Rushing*, 71 A.3d 939 (Pa. Sup. Ct. 2013) .................................. 24

*Doe v. Broderick*, 225 F.3d 440 (4th Cir. 2000) ....................................................... 23

*Ellis v. State*, 353 S.E.2d 19 (Ga. 1987) ................................................................... 23

*Facebook, Inc. v. Superior Court*, No. A144315, 2015 WL 5244640 (Cal. Ct. App. Sept. 8, 2015) ................................................................................................................ 27

*Ferguson v. City of Charleston*, 121 S.Ct. 1281 (2001) ........................................... 30

*In re Application of the U.S. for Historical Cell Site Data*, 724 F.3d 600 (5th Cir. 2013) ... 14, 30

*In re Application of U.S. for an Order Directing Provider of Electronic Communications Service to Disclose Records to the Government*, 620 F.3d 304 (3d Cir. 2010) ............................. 27, 28

*In re Application of U.S. for an Order Pursuant to 18 U.S.C. § 2703(d)*, 830 F. Supp. 2d 114 (E.D. Va. 2011) ................................................................................................ 6

*Johnson v. United States*, 333 U.S. 10 (1948) ........................................................... 38

*Katz v. United States*, 389 U.S. 347 (1967). ....................................................... 15, 28

*Kyllo v. United States*, 533 U.S. 27 (2001) ..................................................... passim

*Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Svcs.*, 545 U.S. 967 (2005) ....... 6

*Oliver v. United States*, 466 U.S. 170 (1984) ........................................................... 22

*Payton v. New York*, 445 U.S. 573 (1980) ................................................................ 19

*People v. Blair*, 602 P.2d 738 (Cal. 1979)...............................................................23

*People v. DeLaire*, 240 Ill. App. 3d 1012 (1993). ..............................................22, 23

*People v. Sporleder*, 666 P.2d 135 (Colo. 1983) ................................................23

*People v. Weaver*, 909 N.E.2d 1195 (N.Y. 2009) ..............................................24

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004) .........................18

*Riley v. California*, 134 S. Ct. 2473 (2014) ..................................................18, 31

*Silverman v. United States*, 365 U.S. 505 (1961) ...............................................19

*Smith v. Maryland*, 442 U.S. 735 (1979)..........................................4, 28, 29, 30, 34

*State v. Brereton*, 826 N.W.2d 369 (Wis. 2013) ..............................................24

*State v. Campbell*, 759 P.2d 1040 (Or. 1988) ....................................................24

*State v. Earls*, 70 A.3d 630 (N.J. 2013) ...........................................................24

*State v. Gunwall*, 720 P.2d 808 (Wash. 1986) ...............................................23

*State v. Hunt*, 450 A.2d 952 (N.J. 1982) .........................................................23

*State v. Jackson*, 76 P.3d 217 (Wash. 2003) ....................................................24

*State v. Rothman*, 779 P.2d 1 (Haw. 1989) ......................................................23

*State v. Shaktman*, 553 So.2d 148 (Fla. 1989) ................................................23

*State v. Thompson*, 760 P.2d 1162 (Id. 1988) ..................................................23

*State v. Zahn*, 812 N.W.2d 490 (S.D. 2012) ....................................................24

*Stoner v. California*, 376 U.S. 483 (1964) ........................................................30

*United States v. Beckett*, 369 F. App'x. 52 (11th Cir. 2010)..........................10, 36

*United States v. Booker*, 543 U.S. 220 (2005)................................................39

*United States v. Christie*, 624 F.3d 558 (3rd Cir. 2010)..............................10, 32, 36

*United States v. Davis*, 785 F.3d 498 (11th Cir. 2015) ......................................................passim

*United States v. Etchin*, 614 F.3d 726 (7th Cir. 2010) .................................................. 19

*United States v. Evans*, 727 F.3d 730 (7th Cir. 2013) .................................................. 39

*United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008) .............................................. 10, 32, 37

*United States v. Goodwin*, 717 F.3d 511 (7th Cir. 2013) .......................................... 40

*United States v. Graham*, 796 F.3d 332 (4th Cir. 2015) ....................................................passim

*United States v. Hayden*, 775 F.d 847 (7th Cir. 2014) ............................................ 11

*United States v. Henderson*, 748 F.3d 788 (7th Cir. 2014) ...................................... 14

*United States v. Hinds*, 770 F.3d 658 (7th Cir. 2014) ............................................ 39

*United States v. Jacobsen*, 466 U.S. 109 (1984) ...................................................... 30

*United States v. Johnson*, 756 F.3d 532 (7th Cir. 2014) ...................................... 39, 40

*United States v. Johnson*, 765 F.3d 702 (7th Cir. 2014) ............................................ 42

*United States v. Jones*, 132 S.Ct. 945 (2012) ....................................................passim

*United States v. Karo*, 468 U.S. 705 (1984) ......................................................passim

*United States v. Knotts*, 460 U.S. 276 (1983) ....................................................... 15

*United States v. Lopez*, 895 F. Supp. 2d 592 (D. Del. 2012) .................................... 24

*United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010) .................................... 23

*United States v. Miller*, 425 U.S. 435 (1976) ...................................... 4, 28, 29, 30, 32

*United States v. Nerber*, 222 F.3d 597 (9th Cir. 2000) ........................................ 23

*United States v. Powell*, 943 F. Supp. 2d 759 (E.D. Mich. 2013) ............................ 24

*United States v. Suing*, 712 F.3d 1209 (8th Cir. 2013) .......................................... 36

*United States v. Taylor*, 778 F.3d 667 (7th Cir. 2015) ............................................ 11

*United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015) ...................................... 39, 40, 41, 42

*United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010) ......................................... 29

*Virginia v. Moore*, 553 U.S. 164 (2008) ................................................................. 22

*Warshak v. United States*, 490 F.3d 455 (6th Cir. 2007) ........................................ 26

*Wong Sun v. United States*, 371 U.S. 471 (1963) .................................................... 38

**Statutes**

16 Maine Rev. Stat. Ann. § 648 ................................................................................ 24

18 U.S.C. § 2 ...................................................................................................... 1, 4, 8

18 USC § 373 ............................................................................................................ 11

18 U.S.C. § 1117 ....................................................................................................... 11

18 U.S.C. § 2703 ................................................................................................ passim

18 U.S.C. § 3231 ......................................................................................................... 1

18 U.S.C. § 3583 ....................................................................................................... 40

18 U.S.C. § 3742 ......................................................................................................... 1

21 U.S.C. § 802 ........................................................................................................... 4

21 U.S.C. § 841 .................................................................................................... 1, 4, 8

21 U.S.C. § 846 .................................................................................................... 1, 4, 8

21 U.S.C. § 957 ........................................................................................................... 5

28 U.S.C. § 1291 ......................................................................................................... 1

28 U.S.C. § 2703 ....................................................................................................... 27

Colo. Rev. Stat. Ann. § 16-3-303.5(2) .................................................................... 24

Haw. Rev. Stat. § 803-44.7(b) ................................................................................. 24

Ill. Const. 1970, art. 1, § 6..........................................................................................22

Minn. Stat. Ann. § 626A .............................................................................................25

Mont. Code Ann. § 46-5-110 ......................................................................................25

O.R.S. § 165.663.........................................................................................................23

Okla. Stat. Ann. § 5761...............................................................................................24

S.C. Code Ann. § 17-30-140.......................................................................................24

U.S. Const. Amend. IV ...............................................................................................15

Utah Code Ann. § 77-23c-102 ....................................................................................25

**Other Authorities**

Alexandra D. Vesalga, *Location, Location, Location: Updating the Elec. Communications Privacy Act to Protect Geological Data*, 42 Golden Gate U. L. Rev. 459, 459-60 (2013) ...................................................................................................................................passim

corporate.comcast.com/ images/Comcast-Transparency-Report-10162014.pdf...............3

http://www.judiciary.senate.gov/imo/media/doc/09-16-15-Leahy-Statement.pdf....26

Pew Research Ctr., *Public Perceptions of Privacy and Security in the Post-Snowden Era*, 32 (Nov. 12, 2014) .................................................................................................. 20, 25

U.S.S.G. § 2D1.1 .........................................................................................................11

U.S.S.G. § 3B1.1 .........................................................................................................11

U.S.S.G. § 3C1.1 .........................................................................................................11

U.S.S.G. § 5D1.3 .........................................................................................................40

U.S.S.G. § 5G1.2 .........................................................................................................12

U.S.S.G. Supp. app. C., amend. 782 ...........................................................................11

**Rules**

11th Cir. R. 36-2 ........................................................................................... 36

Fed. R. Crim. Proc. 11 ................................................................................... 11

Fed. R. Crim. Proc. 51 ................................................................................... 39

## JURISDICTIONAL STATEMENT

Frank Caira was charged in the United States District Court for the Northern District of Illinois in a four-count indictment with having violated 21 U.S.C. § 841, 21 U.S.C. § 846, and 18 U.S.C. § 2. The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231.

On March 8, 2013, Mr. Caira pleaded guilty to two counts pursuant to a written plea agreement including conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 846 (Count 1), and conspiracy to manufacture and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) & 846 (Count 2). In the plea agreement, Mr. Caira reserved the right to appeal the district court's denial of his motion to suppress evidence obtained through the use of administrative subpoenas. (R. 242).

On December 18, 2013, Judge Pallmeyer sentenced Frank Caira to 300 months' imprisonment, including consecutive sentences of 240 months on Count 1 and 60 months on Count 2, 5 years' supervised release, and a special assessment of $200. The court ordered the sentence to run concurrent to Mr. Caira's life sentence in 10 cr 35-1.

Mr. Caira appeals his conviction and sentence. This court has jurisdiction over this case pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. The district court entered a final judgment on December 19, 2013. (R. 334). Mr. Caira timely filed a notice of appeal on December 23, 2013. (R. 341).

**ISSUES PRESENTED FOR REVIEW**

1.  Did the district court err when it denied Mr. Caira's motion to suppress and approved the government's warrantless seizure of his IP login history? Did Mr. Caira have a reasonable expectation of privacy in his location information? Are the privacy concerns heightened by the fact that the government tracked each time he logged into his email from his home computer?

2. Did Mr. Caira have a reasonable expectation of privacy in records held by a third party where he never voluntarily conveyed his location information?

3. If the district court erred when it failed to grant Mr. Caira's motion to suppress, should all "fruits" of the unlawful search be suppressed?

4. Did the district court err when it ordered conditions of supervised release without giving Mr. Caira an opportunity to object or providing reasons for imposing the conditions?

**INTRODUCTION**

Free internet is commonplace in today's world. To keep internet access free, technology companies obtain data each time a person accesses the internet, including each time you send or receive email. The data includes logs that detail the time, date, and location of a user, how a user came to find a product, and what a user viewed while using the internet. Alexandra D. Vesalga, *Location, Location, Location: Updating the Elec. Communications Privacy Act to Protect Geological Data*, 42 Golden Gate U. L. Rev. 459, 459-60 (2013) (citing to information collected by Google, Twitter, and Amazon). "Geolocational data---data that pinpoints a user's location---is among the most useful,

vital, and coveted data for technology companies, as it allows a web service to make relevant suggestions based on a user's real-time location and improves the relevance of targeted online advertising." *Id*. at 460.

Location information in the hands of these third parties have created privacy concerns for individual citizens. Mr. Caira's case is not an isolated or occasional concern. Law enforcement is requesting staggering volumes of information from Internet Service Providers. For example, Comcast reported that in the first half of 2014, it received 11,670 criminal requests.[1] *Available at:* corporate.comcast.com/ images/Comcast-Transparency-Report-10162014.pdf (last visited 8/25/15). Of these requests, 76.6% were based on administrative subpoenas[2], 17% court orders, and 6.3% warrants. *Id*. The government is actively using its subpoena power, which requires no judicial oversight, to gain access to information that may be protected under the Fourth Amendment.

This case provides another example where the district court determined that the defendant's locational data, extracted from the use of his computer in his home, did not fall under the protection of the Fourth Amendment to the Constitution. This case presents the Court with the opportunity to decide the following questions in the first instance: (1) Does an individual have a reasonable expectation of privacy in locational information?; (2) Does an individual have a reasonable expectation of privacy in his IP

---

[1] National Security Requests are not included in these numbers.
[2] Comcast defined subpoenas as frequently seeking identification of a customer account based on a telephone number or IP address assigned to the account. The subpoenas are usually issued by law enforcement or a prosecuting attorney.

login history?; and (3) Does the government, through an administrative subpoena, have unfettered access to all non-content information in the hands of a third party pursuant to *Smith v. Maryland*, 442 U.S. 735 (1979), and *United States v. Miller*, 425 U.S. 435 (1976)?

## STATEMENT OF THE CASE

Mr. Caira was charged in a four-count indictment with having violated 21 U.S.C. § 841, 21 U.S.C. § 846, and 18 U.S.C. § 2. (R.[3] 14, 29). This is a direct appeal from Mr. Caira's criminal convictions on Count 1 and Count 2 in the Northern District of Illinois. The district court erred when it denied Mr. Caira's motion to suppress the evidence obtained through the use of two administrative subpoenas.

Between July 9 and September 17, 2008, an unknown individual emailed a Drug Enforcement Administration (DEA) controlled website based in Hanoi, Vietnam, purportedly in an effort to purchase and import Sassafras Oil. Sassafras Oil is primarily composed of Safrole, a list I chemical under 21 U.S.C. § 802(34)(Q). The emails were sent from gslabs@hotmail.com which was registered in the name Jeff Hurst. These emails were either unsigned or signed only with the name "Steve." (SA 22, 34, 47; R. 162: 2; 173: 2; 188: 1).

The emails between gslabs@hotmail.com and an undercover agent posing as "Miss Tran Thuy" discussed the price for 55 gallons of Sassafras Oil and the cost to ship the oil to 5873 N. Harlem Avenue, Chicago, Illinois. At the agent's request, "Steve" also

---

[3]This brief uses the following abbreviations: "R." refers to the docket number in the district court and the page number, where applicable; and "SA" refers to Defendant's required short appendix.

provided the telephone number 847-560-XXXX, so he could be contacted about the status of the delivery. Another agent identifying himself as "Todd" attempted to contact "Steve" at the above number but was only able to leave voicemails. Additional emails concerned the payment arrangements and "Todd's" contact information. (SA 22, 34, 47; R. 162: 2; 173: 2; 188: 1).

Registration with the Attorney General is required to import any list 1 chemical into the United States. 21 U.S.C. § 957(a). Sassafras Oil is a list 1 chemical, because it is primarily composed of Safrole. Although Safrole is used to manufacture MDMA ("ecstasy"), it is also an important raw material in pesticides and as a fragrance in household products such as floor waxes, polishes, soaps, detergents and cleaning agents. (SA 11-12; R. 162: 2-3). DEA records indicated that neither Jeff Hurst nor GS Labs were registered to import Safrole, nor was 5873 N. Harlem Avenue[4] associated with anyone who was registered to import Safrole. (SA 12, 47; R. 162: 3; 188: 1).

In an effort to locate the user of the hotmail address, on September 2, 2008, the DEA issued an administrative subpoena[5] to Microsoft Corporation requiring the

---

[4] It appears that the government never linked this address to Mr. Caira. Through the administrative subpoena to Comcast, the government learned about Mr. Caira's residence in Downers Grove. (SA 32; R. 161-1:12).

[5] The government did not obtain a search warrant or any authorization from a court prior to the issuance of any administrative subpoena. (SA 14; R. 162: 5). However, twenty-four days after issuing the administrative subpoena, the government obtained a search warrant to obtain subscriber information, transactional information, including IP login history, and emails from the gslabs@hotmail.com. (R. 148-1). Upon Mr. Caira's motion, the district court quashed the warrant due to government's failure to include material information in the affidavit but later vacated the order after the government indicated that it did not intend to use any of the information obtained from the warrants but instead planned to rely on the administrative subpoenas. (R. 148, 154, 160).

disclosure of "all basic subscriber information, including the subscriber name, address, length of service (including start date) and types of services used including any temporarily assigned network address, Passport.net accounts, means and source of payment (including credit card or bank account number), and the account login histories (IP login history) of, the following email account(s): gslabs@hotmail.com." (SA 12, 22, 47; R. 162: 3; 162-1: 2; 188: 1). The subpoena also requested that Microsoft not disclose the existence of this request. (SA 22; R. 162-1: 2).

When a device accesses the internet, it uses a unique numerical address called an Internet Protocol ("IP") address to identify itself to other computers. *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Svcs.*, 545 U.S. 967, 987, n.1 (2005). Simply, an IP address is a series of four (4) numbers separated by periods, and each of the four (4) numbers is a whole number between zero (0) and two hundred fifty five (255). Each time individuals access the Internet, the device is assigned an IP address. Each Internet Service Provider ("ISP") is associated with a particular block of IP addresses for use by that ISP's customers or subscribers. *In re Application of U.S. for an Order Pursuant to 18 U.S.C. § 2703(d)*, 830 F. Supp. 2d 114, 120 (E.D. Va. 2011). The ISP logs the date, time, and duration of the internet session for each IP address and can identify the user of that IP address for a particular session from these records.

Here, in response to the subpoena, Microsoft turned over several documents. The first document included basic subscriber information, which included first and last name, state, zip code, country, IP address from which the account was registered, and the date the account was created. (SA 24-28; R. 162-1: 4-8). This IP address was linked to

Mr. Caira's employer Northwestern University. (SA 12, 34, 47-48; R. 162: 3; 173: 2; 188: 1-2). Microsoft also turned over the entire IP login history for gslabs@hotmail.com, which included a series of 114 logins and corresponding IP addresses (spanning 73 days), and date and times. (SA 26-28; R. 162-1: 6-8). From this information, the government discovered that 24.15.180.222 was an IP address frequently used to access gslabs@hotmail.com. (SA 12-13, 26-28; R. 162: 3-4; 162-1: 6-8).

The government thereafter issued a subpoena to Comcast IP Services, the owner of IP address 24.15.180.222, and requested that Comcast disclose "records related to 24.15.180.222 including any and all email addresses associated with that IP address; a) customer name and other user name(s); b) addresses; c) records of session times and durations; d) length of service (including start date) and types of service used; e) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and f) means and source of payment for such service (including credit card or bank account numbers)." (SA 13, 30, 47-48; R. 162:4, 162-1: 10; 188: 1-2). The subpoena requested that Comcast not disclose the existence of this request. (SA 30; R. 162-1: 10).

In response to the subpoena, Comcast turned over the subscriber information for IP address 24.15.180.222. (SA 32; R. 162-1:12). This information included the subscriber name, which turned out to be Mr. Caira's wife, the home address, telephone number, type of service, account number, creation date, email users IDs, current IP address and method of payment. (SA 13, 32, 34, 47-48; R. 162: 4, 162-1:12, 173: 2, 188: 1-2). Agents determined that Mr. Caira worked at Northwestern University, lived at the address

disclosed by Comcast, and used this information to conduct further investigation that resulted in trash pulls from the residence. (SA 13, 34, 47-48; R. 162: 4, 173: 2, 188: 1-2).

The government charged Mr. Caira in a superseding indictment in the United States District Court for the Northern District of Illinois with conspiracy to manufacture, distribute, and possess with the intent to distribute MDMA or ecstasy in violation of 21 U.S.C. § 846 (Count 1); conspiracy to manufacture and possess with the intent to distribute marijuana in violation of 21 U.S.C. § 846 (Count 2); and two counts of possession of marijuana plants with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 18 U.S.C. § 2 (Counts 3 and 4). (R. 29).

Mr. Caira filed a motion to suppress evidence that the government obtained through the use of the two administrative subpoenas. (R. 162). Mr. Caira asserted that he had a reasonable, subjective expectation of privacy in the detailed history of IP addresses used to log into his email address, and therefore, the government should not have been able to obtain that information without a warrant. (SA 13-20; R. 162: 4-11). The motion did note that Mr. Caira had a subjective expectation of privacy not in the basic subscriber information but rather in the detailed history of locations and every IP address which was used to access his personal e-mail account, and this expectation of privacy was one that society is prepared to recognize as reasonable. (SA 10-32, 47-52; R. 162; 188).

Mr. Caira further argued that although the Stored Communications Act ("SCA"), 18 U.S.C. § 2703, authorizes the use of administrative subpoenas to obtain basic subscriber information, specifically (A) name; (B) address; (C) local and long distance

telephone connection records, or records of session times and durations; (D) length of service and types of service utilized; (E) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and (F) means and source of payment for such service, none of these authorizes or permits the government to obtain a detailed history of every IP address used to access the email account and the dates when these addresses were used. (SA 18-20; R. 162: 9-11).

The government responded that Mr. Caira's Fourth Amendment rights were not violated, because Mr. Caira did not have a reasonable expectation of privacy in Microsoft's records regarding his email account or in the records collecting the IP addresses that he used to access his e-mail. (SA 35-38; R. 173: 3-6). The government noted that three appellate courts had concluded that a person had no expectation of privacy in IP addresses, because the person should know that this information is maintained by a third party. (SA 35-36; R. 173: 3-4). It also stated that the SCA authorized the government to obtain the information it obtained here, emphasizing that 18 U.S.C. § 2703(c)(2) authorizes administrative subpoenas to obtain (c) "… records of session times and durations and (D) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address;..." (SA 37; R. 173: 5).

Mr. Caira replied that information contained in the records of third parties does not erode protections under the Fourth Amendment. (SA 39-40; R. 177: 1-2). Second, he noted that the U.S. Supreme Court had issued an opinion in *United States v. Jones*, 132 S.

Ct. 945 (2012), in which the majority of the justices agreed that "longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy." (SA 40; R. 177: 2). Third, Mr. Caira argued that the information sought by the administrative subpoenas, specifically the complete history of every IP address that had accessed gslabs@hotmail.com (which was not the IP address under which that e-mail account was registered), went far beyond basic subscriber information, the information necessary for ISPs to perform their services, and what is authorized by the SCA. (SA 45-46; R. 177: 5-6).

The district court gave two reasons for denying Mr. Caira's motion to suppress. (SA 47-52; R. 188). First, the court concluded that Mr. Caira did not have a reasonable expectation of privacy in the subscriber information provided to an internet provider (a third party), including the detailed history of locations from which he accessed his personal e-mail account. (SA 48-51; R. 188: 2-5) (citing *United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008); *United States v. Christie*, 624 F.3d 558 (3rd Cir. 2010); *United States v. Beckett*, 369 F. App'x. 52 (11th Cir. 2010)). Second, the court concluded that the materials authorized for disclosure by 18 U.S.C. § 2703(c) (the SCA) is "precisely the type obtained here." (SA 51; R. 188: 5). The court did not specifically address Mr. Caira's argument that information obtained by third parties does not diminish a person's rights under the Fourth Amendment.

On February 12, 2010, Mr. Caira was indicted and charged in the Northern District of Illinois, 10 CR 35, with conspiracy to murder and solicitation to murder the DEA Agent and Assistant United States attorney assigned to investigate and prosecute

the instant case in violation of 18 U.S.C. §§ 1117 & 373. (*See* 10 cr 35, dkt. #10). Mr. Caira was convicted of both charges and sentenced to life imprisonment. (*See* 10 cr 35, dkt. #80). This case and sentence is not connected to the instant appeal.

On March 8, 2013, Mr. Caira pleaded guilty to Count 1 and Count 2 pursuant to a written plea agreement. (R. 242). In the plea agreement, Mr. Caira reserved the right, pursuant to Fed. R. Crim. Proc. 11(a)(2), to appeal the district court's denial of his motion to suppress evidence obtained through the use of administrative subpoenas. (R. 242: 14-15).

At sentencing, the district court reviewing the PSR, calculated the advisory guidelines, and heard from both parties. (R. 395: 1-12). Based on a marijuana equivalency of 10,729.5 kilograms, the probation office started at level 36.[6] *See* U.S.S.G. § 2D1.1(b)(1). Four levels were added, including two for Mr. Caira's role in the offense, U.S.S.G. § 3B1.1(c), and two for obstruction of justice, U.S.S.G. § 3C1.1. (R. 395: 11-12). The court concluded that Mr. Caira had a base offense level of 40 and criminal history I, which led to an advisory guideline of 292-365 months' imprisonment. (R. 395: 12-13, 16). The district court noted that if released, Mr. Caira would have 5 years' supervised

---

[6] Mr. Caira appears to be eligible for a future sentencing reduction based on retroactive Amendment 782 to the Guidelines, which has reduced the base offense levels assigned to drug quantities in § 2D1.1 by 2 levels. *See* U.S.S.G. Supp. app. C., amend. 782, p. 71 (2014). After applying this amendment, his imprisonment range for his drug convictions would be 235 to 293 months. *See id*. § 2D1.1(c)(3). To benefit from this amendment, this Court has stated that Mr. Caira would need to file a new motion under 18 U.S.C. § 3582(c)(2) in the district court based on Amendment 782. *See United States v. Taylor*, 778 F.3d 667, 672 (7th Cir. 2015); *United States v. Hayden*, 775 F.d 847, 850 (7th Cir. 2014).

release, and the standard conditions would apply. (R. 395: 22). The district court

sentenced Frank Caira to 300 months' imprisonment, including consecutive sentences of

240 months on Count 1 and 60 months on Count 2, *see* U.S.S.G. § 5G1.2(d), 5 years'

supervised release, and a special assessment of $200. (R. 395: 22, 25). The court ordered

the sentence to run concurrent to Mr. Caira's life sentence in 10 cr 35-1. (R. 395: 24). The

district court entered a final judgment on December 19, 2013. (SA 1-9; R. 334). Mr. Caira

timely filed a notice of appeal on December 23, 2013. (R. 341).

## SUMMARY OF THE ARGUMENTS

The district court erred when it denied Mr. Caira's motion to suppress the

government's warrantless seizure of his IP login history. The government's use of an

administrative subpoena to gain access to 73 days of login information, including 70

logins to his home computer, violated his reasonable expectation of privacy. Mr. Caira

had a subjective expectation of privacy in his location information, especially

considering he accessed his personal email account from his home. Society has

recognized privacy in email records and location information as reflected in federal

cases, state cases, and state statutes.

Any reliance on the Stored Communications Act to uphold the district court's

denial of the motion to suppress is misplaced, because the SCA is not applicable or

relevant. The SCA is not applicable because Mr. Caira had a reasonable expectation of

privacy in his IP login history. In addition, the government's request for IP login history

exceeded the scope of information it was statutorily allowed to obtain through an

administrative subpoena. The SCA is neither relevant to today's technology nor does it

take into account the dramatic change in the quantity of private information in the hands of third parties versus when the statute was drafted and updated. The almost-30-year-old statute has not aged well and needs dramatic revision to comply with the Fourth Amendment.

Information in the hands of a third party is not categorically excluded from protection under the Fourth Amendment. Mr. Caira did not voluntarily convey his location information to the ISP when he logged into his email. In addition, the information contained in one's IP address is extensive, and an email user has not relinquished all privacy to this information by virtue of using a communication tool that is virtually mandatory in every facet of life. Despite being in the hands of a third party, Mr. Caira had a reasonable expectation of privacy in his IP login history.

If this court concludes that the district court erred when it denied Mr. Caira's motion to suppress, all "fruits" of the unlawful search should be suppressed. At a minimum, this includes all evidence that derived from the administrative subpoena issued to Microsoft, which revealed Mr. Caira's identity and home address.

Mr. Caira is entitled to a full resentencing, because the district court failed to give any notice to Mr. Caira or any reasoning for its imposition of both standard and a special condition of supervised release. Mr. Caira never saw a list of the Probation's Office proposed condition or the district court's addition of a special condition until the judgment was signed and entered. All conditions should be vacated and his case remanded for a full resentencing.

## ARGUMENTS

### I. Warrantless seizure of Frank Caira's IP login history violated his Fourth Amendment rights, because he has a reasonable expectation of privacy in his location information.

Frank Caira's argument that a warrantless seizure of his IP login history violated his Fourth Amendment rights is an issue of first impression in this circuit and has not been definitively decided in the courts. In a similar case, the Fourth Circuit Court of Appeals recently created a circuit split when it decided that the government conducted a search under the Fourth Amendment when it obtained and inspected a cell phone user's historical cell site location information ("CSLI") for an extended period of time. *United States v. Graham*, 796 F.3d 332, 344-45 (4th Cir. 2015)[7]; *but see United States v. Davis*, 785 F.3d 498, 511-13 (11th Cir. 2015) (individuals have no privacy interest in location information over long term tracking), and *In re Application of U.S. for Historical Cell Site Data*, 724 F.3d 600, 611-15 (5th Cir. 2013) ("*In re Application (Fifth Circuit)*") (same).

### A. Standard of Review

When reviewing the denial of a motion to suppress, this Court reviews the district court's legal conclusion and mixed questions of law and fact *de novo*. *United States v. Henderson*, 748 F.3d 788, 790 (7th Cir. 2014).

---

[7] On October 28, 2015, the Fourth Circuit granted the government's petition for rehearing en banc. *United States v. Graham*, No. 12-4659, Dkt. 188 (4th Cir.). The en banc hearing has been tentatively scheduled for the week of March 22, 2016.

## B. Legal Analysis

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. Amend. IV; *Katz v. United States*, 389 U.S. 347, 353 (1967). A "search" pursuant to the Fourth Amendment occurs where the government invades a matter in which a person has an expectation of privacy that society is willing to recognize as reasonable. *Kyllo v. United States*, 533 U.S. 27, 33 (2001). Pursuant to *Katz*, the Court asks whether there exists a "subjective expectation of privacy in the object of the challenged search," and whether "society [is] willing to recognize that expectation as reasonable." *Kyllo*, 533 U.S. at 33. Thus, a party must establish both a subjective and an objective expectation of privacy. *Davis*, 785 F.3d at 507 (internal quotation omitted).

Over the past 30 years, the Supreme Court has defined privacy interests. In 1983, the Supreme Court decided that tracking the movement of an item on public roads did not invade a defendant's reasonable expectation of privacy, *see United States v. Knotts,* 460 U.S. 276, 278-79 (1983), but it had yet to address whether tracking the location of people and their property into a private space and whether continued tracking of a person's location over an extended period of time amounted to a Fourth Amendment search. *Graham*, 796 F.3d at 346.

Soon after *Knotts*, the Supreme Court held that continued monitoring of an object once it entered a home violated the Fourth Amendment. *United States v. Karo*, 468 U.S. 705, 714 (1984). The court concluded that a warrant was necessary to obtain the information that an item is actually located in a specific residence at a particular time and in the person's possession. *Id.* at 715. "Indiscriminate monitoring of property that

has been withdrawn from public view would present far too serious a threat to privacy interests in the home to escape entirely some sort of Fourth Amendment oversight." *Id.* at 716 (footnote omitted). In 2001, the Supreme Court again said that the government's use of a thermal imaging device to obtain information about the location of people and objects within the home constituted a search under the Fourth Amendment. *Kyllo*, 533 U.S. at 29-30.

In 2012, the Supreme Court addressed the tracking of a person's location over an extended period of time. *See Jones*, 132 S. Ct. at 949-56. In *Jones*, without obtaining a warrant, the police attached a GPS device to a suspect's vehicle and tracked the vehicle for 28 days. *Id.* at 948. A split court held that the police's action had amounted to a search and therefore, a warrant was required. *Id.* at 949-56. Justice Scalia's majority opinion, including five Justices, concluded that it amounted to a search under the traditional trespass theory and declined to address the *Katz* reasonable expectation of privacy test. *Id.* at 949-52. However, five Justices, in two concurring opinions, confronted the *Katz* question and agreed that "longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy." *Id.* at 955 (Sotomayor, J., concurring); *Id.* at 964 (Alito, J. concurring in the judgment). Although neither concurrence provided a definitive time table for when Fourth Amendment protections are triggered, Justice Alito did state "the line was surely crossed before the 4-week mark." *Id.* at 964.

### C. The government violated Mr. Caira's reasonable expectation of privacy in his IP login history when it used an administrative subpoena to collect 73 days of location information.

The DEA's issuance of an administrative subpoena commanding and requiring Microsoft to produce and disclose "the account login histories (IP login history)…" in addition to "all basic subscriber information" violated Mr. Caira's Fourth Amendment rights against an unreasonable search and seizure. (SA 22; R. 162-1: 2). The warrantless search and seizure resulted in the government obtaining over two months of locational information. Here, the government exercised unfettered discretion when it requested unlimited IP login information. Microsoft not only turned over the basis subscriber information but also included 114 logins with corresponding IP addresses, dates, and times. (SA 24-28; R. 162-1: 4-8). These logins occurred over a period of 73 days. (*Id*.)

The split *Jones* court agreed that tracking a vehicle for an extended time "impinges on expectations of privacy." *Jones*, 132 S. Ct. at 964 (Alito, J., concurring in the judgment). Here, the government was essentially given data that was equivalent to placing a tracking device on Mr. Caira. The government obtained location information all 114 times that Mr. Caira logged into his email over a 73-day period. Four justices in *Jones* acknowledged that people have an expectation that the police would not and could not secretly monitor and catalogue their movements for a long time. *Id*. The privacy violation here exceeded the violation in *Jones*.

In the CSLI context, Justice Sotomayor explained, electronic location tracking implicates the Fourth Amendment because "it generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial,

political, professional, religious, and sexual associations." *Jones*, 132 S. Ct. at 955. The Supreme Court also recently stated that cell phone locational data raises particularly acute privacy concerns because it "can reconstruct someone's specific movements down to the minute, not only around town but also within a particular building." *Riley v. California*, 134 S. Ct. 2473, 2490 (2014) (citing *Jones*, 132 S. Ct. at 955 (Sotomayor, J., concurring)). Long-term location information disclosed in an extended IP login history provides detailed information and reveals comprehensive and specific details of a person's life.

IP addresses are similar to CSLI information. Like an IP login history, examination of historical CSLI allows the government to locate both a person and a phone at private locations at specific points in time. *Graham*, 796 F.3d at 347. *Graham* concluded that the government invaded a reasonable expectation of privacy when it relied on inspection of CSLI records, a technology not in general use, to discover the movements of an individual over an extended period of time. *See id.* at 350 (finding that the government engages in a Fourth Amendment search when it seeks to examine 14 days or more of historical CSLI). The government cannot know in advance whether it will obtain information from private spaces protected by the Fourth Amendment, *see id.*, but in the case of IP login history, it should assume that it will.

The IP login history is more invasive than GPS and equally invasive as CSLI data, because IP addresses provide meaningful information about a person's actual physical location as well as the network and even the specific machine being used. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 409-10 (2d Cir. 2004) (IP addresses identify

the computer's location). The government used the administrative subpoena to easily gain access to a plethora of information about Mr. Caira. Without it, the government did not know Mr. Caira's identity or location.

Here, the violation of privacy is more obvious, because the government used the IP login history to locate Mr. Caira in his home on 70 occasions. When it issued the administrative subpoena, the government did not know the owner of gslabs@hotmail.com or his location. His IP address was critical information, because it led the government to Mr. Caira and his home. The government used technology not available to the general public to essentially reach through Mr. Caira's email address into his home, a protected space.

"The sanctity of the home is a central concern of the Fourth Amendment." *United States v. Etchin*, 614 F.3d 726, 733 (7th Cir. 2010). It is therefore "a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (internal quotation marks omitted). "At the very core" of the Fourth Amendment "stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961).

The government's use of an administrative subpoena to obtain 73 days of exact location information violated Mr. Caira's reasonable expectation of privacy. *See Jones*, 132 S. Ct. at 955 (Sotomayor, J., concurring), 964 (Alito, J., concurring in the judgment). As seen in this case, locational monitoring by the government can be done at virtually no expense with a letter and a signature as compared to past conventional surveillance

techniques. *See id.* at 956 (Sotomayor, J., concurring). Requiring the police or government to obtain a warrant is justified and will ensure that the use of IP login history is not abused, by imposing upon agents the requirement that they demonstrate in advance their justification for the desired search. *Karo*, 468 U.S. at 717.

### 1. Mr. Caira had a subjective expectation of privacy in his location information.

Mr. Caira presumed that by sending an email, he was not communicating to the public his present physical location. Mr. Caira is not alone in that belief. Recent polling data demonstrated that over 80% of people consider "[d]etails of [their] physical location over time" to be "sensitive"—evincing greater concern over this information than the contents of their text messages, websites visited, or their relationship history. Pew Research Ctr., *Public Perceptions of Privacy and Security in the Post-Snowden Era*, 32, 34 (Nov. 12, 2014) (*Available at: http://www.pewinternet.org/files/2014/11/ PI_PublicPerceptionsof Privacy_111214.pdf*).

Furthermore, there is no question that people have a subjective expectation of privacy in their home. "We have said that the Fourth Amendment draws a firm line at the entrance to the house. That line, we think, must be not only firm but also bright— which requires clear specification of those methods of surveillance that require a warrant." *Kyllo*, 533 U.S. at 40. Searches and seizures inside a home without a warrant

are presumptively unreasonable absent exigent circumstances." *Karo*, 468 U.S. at 714-15 (collecting cases).

Inspection of 114 logins spanning 73 days invaded an even greater privacy interest than the single-day searches challenged in *Karo* and *Kyllo* because of the mere amount of information collected, and 70 of the 114 logins occurred in his home. Similar to the searches challenged in *Karo*, *Kyllo*, and *Graham*, examination of a historical IP logins allowed the government to place Mr. Caira and his computer at his home at specific points 70 different times. "In the home, our cases show, all details are intimate details, because the entire area is held safe from prying government eyes." *Kyllo*, 533 U.S. at 37. "The *Karo* and *Kyllo* Courts recognized the location of a person and her property within a home at a particular time as a 'critical' private detail protected from the government's intrusive use of technology." *Graham*, 796 F.3d at 346-47; *see Kyllo*, 533 U.S. at 37; *Karo*, 468 U.S. at 715.

There exists a minimal expectation that people have privacy in their home, and this expectation has been acknowledged to be reasonable. *Kyllo*, 533 U.S. at 34.

> To withdraw protection of this minimum expectation would be to permit police technology to erode the privacy guaranteed by the Fourth Amendment. We think that obtaining by sense-enhancing technology any information regarding the interior of the home that could not otherwise have been obtained without physical intrusion into a constitutionally protected area…constitutes a search—at least where (as here) the technology in question is not in general public use. This assures preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted.

*Id.*

Illinois law supports Mr. Caira's subjective expectation of privacy in his IP login history. Mr. Caira's IP login history placed him in his home in Illinois. Illinois has recognized the importance of protecting records that monitor activities in the home. *People v. DeLaire*, 240 Ill. App. 3d 1012, 1019-21 (1993). The Illinois Constitution states:

> The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit articularly describing the place to be searched and the persons or things to be seized.

Ill. Const. 1970, art. 1, § 6. *DeLaire* held that citizens have a legitimate expectation that their telephone records would not be disclosed. *Id*. at 1020. The court concluded that *Miller* and *Smith* were not controlling, because the Illinois Constitution provided greater protection that the Federal Constitution. *Id*. Although Illinois case law and the state constitution are not dispositive, it does support that Mr. Caira's expectation of privacy in his IP login history was reasonable.

### 2. The nationwide trend toward greater protection for privacy in email records and location information demonstrates that society recognizes that a privacy interest in this data is reasonable.

To determine reasonable expectations of privacy, the reviewing court should look to "societal understandings" of what should be considered private. *Oliver v. United States*, 466 U.S. 170, 178 (1984). Even though the Fourth Amendment is not "a redundant guarantee of whatever limits on search and seizure legislatures might have enacted," *Virginia v. Moore*, 553 U.S. 164, 168 (2008), the existence of both federal and state statutory protection for certain kinds of information helps inform whether society has

determined that a particular expectation of privacy is reasonable. *See, e.g., United States v. Maynard*, 615 F.3d 544, 564 (D.C. Cir. 2010) ("state laws are indicative that prolonged GPS monitoring defeats an expectation of privacy that our society recognizes as reasonable"); *Doe v. Broderick*, 225 F.3d 440, 450 (4th Cir. 2000) (federal statutory protection "is relevant to the determination of whether there is a 'societal understanding'" of a legitimate expectation of privacy in medical records); *United States v. Nerber*, 222 F.3d 597, 604-05 (9th Cir. 2000) (federal wiretap statute is "strong evidence" that society would find warrantless video surveillance unreasonable).

The societal recognition of privacy in phone records and location information is reflected in federal and state cases and state statutes deeming this data to be private. Following the decision in *Smith*, many states concluded that their residents had a reasonable expectation of privacy under their state constitutions in dialed phone numbers—notwithstanding the fact those records are held by the phone provider. *See People v. Blair*, 602 P.2d 738, 746 (Cal. 1979); *People v. Sporleder*, 666 P.2d 135, 141-43 (Colo. 1983); *State v. Rothman*, 779 P.2d 1, 7-8 (Haw. 1989); *State v. Thompson*, 760 P.2d 1162, 1165-67 (Id. 1988); D*eLaire*, 610 N.E.2d at 1282; *State v. Hunt*, 450 A.2d 952, 955-57 (N.J. 1982); *Commonwealth v. Melilli*, 555 A.2d 1254, 1256-59 (Pa. 1989); *State v. Gunwall*, 720 P.2d 808, 813-17 (Wash. 1986); *State v. Shaktman*, 553 So.2d 148 (Fla. 1989). By statute, Georgia and Oregon required police to demonstrate probable cause to install and operate a pen register to obtain dialed phone numbers. *See Ellis v. State*, 353 S.E.2d 19, 21-22 (Ga. 1987); O.R.S. § 165.663.

Pre-*Jones*, the state supreme courts of three states held that people could reasonably expect privacy in their location, meaning that using technology to track a person's movements was a Fourth Amendment "search." *See, e.g. People v. Weaver*, 909 N.E.2d 1195, 1201 (N.Y. 2009); *State v. Campbell*, 759 P.2d 1040, 1048-49 (Or. 1988); *State v. Jackson*, 76 P.3d 217, 223-24 (Wash. 2003). Five state legislatures passed statutes requiring police to obtain a probable cause search warrant to track a person's location with a tracking device like a GPS—even when the person is traveling in public places. *See* Haw. Rev. Stat. § 803-44.7(b); Okla. Stat. Ann. § 5761 (c)(4); S.C. Code Ann. § 17-30-140(b)(2).

Post-*Jones*, many people now reasonably expect privacy in their location, as more courts have recognized that an expectation of privacy in a person's location means technologies like GPS or real-time cell phone tracking are Fourth Amendment "searches" under *Katz. Commonwealth v. Rousseau*, 990 N.E.2d 543, 552-53 (Mass. 2013); *Commonwealth v. Rushing*, 71 A.3d 939, 961-64 (Pa. Sup. Ct. 2013); *State v. Brereton*, 826 N.W.2d 369, 379 (Wis. 2013); *United States v. Powell*, 943 F. Supp. 2d 759, 776-77 (E.D. Mich. 2013); *State v. Zahn*, 812 N.W.2d 490, 496-99 (S.D. 2012); *United States v. Lopez*, 895 F. Supp. 2d 592, 602 (D. Del. 2012). Courts and state legislatures have also extended privacy protections to historical CSLI. *See Commonwealth v. Augustine*, 4 N.E.3d 846, 850 (Mass. 2014) (adopting a warrant requirement to obtain that information); *State v. Earls*, 70 A.3d 630, 644 (N.J. 2013) (same). Five more states legislated privacy protections for historical cell site data that require law enforcement to apply for a search warrant to obtain this data. *See* Colo. Rev. Stat. Ann. § 16-3-303.5(2); 16 Maine Rev. Stat. Ann. § 648;

Minn. Stat. Ann. §§ 626A.28(3)(d), 626A.42(2); Mont. Code Ann. § 46-5-110(1)(a); Utah Code Ann. § 77-23c-102(1)(a). Even in the wake of technological advances, society wants more privacy protections, not less.

"The Supreme Court has recognized an individual's privacy interests in comprehensive accounts of her movements, in her location, and in the location of her personal property in private spaces, particularly when such information is available only through technological means not in use by the general public." *Graham*, 796 F.3d at 345. Four justices in *Jones* noted that with regard to longer term GPS monitoring, society expected that police would not and could not secretly monitor and catalogue an individual's movements over a long period of time. *Jones*, 132 S. Ct. at 964 (Alito, J., concurring in the judgment). Obtaining 73 days of location information through IP login history is no different. The government should not be able to obtain information on every place you log in to your email, whether it be manually or by a device under your control that automatically downloads your emails, without a warrant.

The use of email has become "so pervasive that some persons may consider [it] to be [an] essential means or necessary instrument [ ] for self-expression, even self-identification." *City of Ontario v. Quon*, 130 S. Ct. 2619, 2630 (2010). As stated above, over 80% of people consider "[d]etails of [their] physical location over time" to be "sensitive." Pew Research Ctr., *Public Perceptions of Privacy and Security in the Post-Snowden Era*, at 34. Privacy of your location information while checking email from your home falls squarely within the societal expectation that people should be protected from warrantless searches and seizures within one's home. "[P]rivate residences are

places in which the individual normally expects privacy free of governmental intrusion not authorized by a warrant, and that expectation is plainly one that society is prepared to recognize as justifiable." *Karo*, 468 U.S. at 714-15 (collecting cases).

### 3. The Stored Communication Act is not applicable or relevant.

Because Mr. Caira had a reasonable expectation of privacy in his IP login history as he accessed his email from his home, the SCA would not apply. *See Kyllo*, 533 U.S. at 34 ("To withdraw protection of this minimum expectation [of privacy] would be to permit ... technology to erode the privacy guaranteed by the Fourth Amendment."); *Davis*, 785 F.3d at 524-25 (11th Cir. 2015) (Rosenbaum, J., concurring) ("our historical expectations of privacy do not change or somehow weaken simply because we now happen to use modern technology to engage in activities in which we have historically maintained protected privacy interests").  Regardless, the SCA has not aged well. The SCA was enacted in 1986 and updated in 2001, *see* 18 U.S.C. § 2703, but there is no question that technology has changed dramatically since 2001. *See* http://www.judiciary.senate.gov/imo/media/doc/09-16-15-Leahy-Statement.pdf ("Since 1986, technology companies have continued to create new ways of communicating. But the privacy rules governing this critical area are simply outdated."). Senator Leahy, one of the original drafters of the SCA, has continually called for reform of the entire ECPA noting that the law is significantly "outdated and outpaced by rapid changes in technology." Vesalga, 42 Golden Gate U. L. Rev. at 461. Furthermore, sections of the act have been called out as potentially unconstitutional. *See Warshak v. United States*, 490 F.3d 455, 479–80 (6th Cir. 2007), *vacated*, 532 F.3d 521 (6th

Cir. 2008) (en banc); *Facebook, Inc. v. Superior Court*, No. A144315, 2015 WL 5244640 (Cal. Ct. App. Sept. 8, 2015).

Furthermore, any reliance on the SCA by the government is misplaced. The applicable section of the SCA is as follows:

> 28 U.S.C. § 2703(c)(2): A provider of electronic communication service or remote computing service shall disclose to a governmental entity the—
>> (A) name;
>> (B) address;
>> (C) local and long distance telephone connection records, records of session times and durations;
>> (D) length of service (including start date) and types of service utilized;
>> (E) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and
>> (F) means and source of payment for such service (including any credit card or bank account number),
> of a subscriber to or customer of such service when the governmental entity uses an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena or any means available under paragraph (1).

The SCA equates any temporarily assigned network address with a subscriber number or identity, and both Microsoft and Comcast included this number as part of the subscriber information. (SA 24, 32; R. 162-1:4, 12). The government, however, knew it needed more than any temporary assigned network address, so it made the additional request that Microsoft include the entire IP login history for the account. (SA 22; R. 162-1: 2). Therefore, even if the SCA applied to this case, the government would have been required to obtain a warrant for IP login history under § 2703(c)(1)(A), because the IP login history does not fall under § 2703(c)(2). *See In re Application of U.S. for an Order*

*Directing Provider of Elec. Comm'ns Serv. to Disclose Records to the Gov't*, 620 F.3d 304, 307

(3d Cir. 2010) ("*In re Application (Third Circuit)*") (the subpoena option in § 2703(c)(2)

"covers more limited information—such as a customer's name, address, and certain

technical information—as distinguished from…§ 2703(c)(1) which broadly covers 'a

record or other information pertaining to a subscriber or customer.'"). The government

did not have enough information to legally obtain a warrant. (R. 148, 154, 160).

In any event, the government's actions amounted to a search, because Mr. Caira had

a legitimate expectation of privacy in his IP login history as he accessed his email from

his home. Therefore, the SCA is not applicable and reliance on the statute to justify the

search is misplaced. *See Kyllo*, 533 U.S. at 34; *Davis*, 785 F.3d at 524-25 (11th Cir. 2015)

(Rosenbaum, J., concurring).

**II. Mr. Caira had a reasonable expectation of privacy in his IP login information despite it being held by a third party, because he did not voluntarily turn over his location information or know that this information was being collected and stored.**

*A. Legal Background*

Information that a person discloses to third parties may be obtained by the

government if the disclosure is voluntary, limited, and not inherently private. In

applying the *Katz* test, the Supreme Court generally held that "a person has no

legitimate expectation of privacy in information he voluntarily turns over to third

parties." *Smith*, 442 U.S. at 743-44; *see Miller*, 425 U.S. at 442. In *Miller*, the Court stated

that the Fourth Amendment does not protect "'what a person knowingly exposes to the

public.'" *Miller*, 425 U.S. at 42 (quoting *Katz*, 389 U.S. at 351). The Court explained that

the nature of the documents must be examined to determine whether there is a legitimate expectation of privacy in their contents. *Id*. The documents were negotiable instruments and not confidential, so the person did not have an objectively reasonable expectation of privacy. *Id*.

In *Smith*, the court narrowed in on voluntariness and knowledge. *Smith*, 442 U.S. at 742-46. The user voluntarily dialed numbers and knew that the company recorded and stored the information, as the third party provided a print out of numbers in each monthly bill. *Id*. However, the dialed numbers that the user disclosed to the third party (by physically punching or dialing each number) was the only information the government obtained. *Id*. at 744. Therefore, the court concluded that the user had no reasonable expectation of privacy. *Id*. at 743-44.

The federal courts of appeals have not uniformly applied the third party doctrine. A circuit split exists on whether the third-party doctrine is still applicable today. *Graham* concluded that *Smith* and *Miller* should no longer control the reasonable expectation of privacy test in the wake of technological advances. *Graham*, 796 F.3d at 360-61; *In re Application (Third Circuit)*, 620 F.3d at 317-18 (finding *Smith* and *Miller* do not apply to CSLI because individuals do not voluntarily convey their locational data in any meaningful sense); *see Jones*, 132 S. Ct. at 957 (Sotomayor, J. concurring); *United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010). "Fourth Amendment jurisprudence teaches us that, even as technology evolves, protections against government intrusion should remain consistent with those privacy expectations society deems reasonable." *Graham*, 796 F.3d at 359. However, other courts continue to apply *Smith* and *Miller* and

have concluded that there is no subjective or objective reasonable expectation of privacy in a third-party's business record. *Davis*, 785 F.3d at 511; *see In re Application (Fifth Circuit)*, 724 F.3d at 611-15.

### B. An expectation of privacy in an IP login history is reasonable even though the information is held by a third party.

Information in the hands of a third party is not categorically excluded from protection under the Fourth Amendment. *Ferguson v. City of Charleston*, 121 S. Ct. 1281, 1288 (2001); *see, e.g., United States v. Jacobsen*, 466 U.S. 109, 114 (1984); *Stoner v. California*, 376 U.S. 483, 487-88, 490 (1964). "It is the voluntary conveyance—not the mere fact that the information winds up in the third party's records—that demonstrates as assumption of risk of disclosure and therefore the lack of any reasonable expectation of privacy." *Graham*, 796 F.3d at 354-55. In *Graham*, the Fourth Circuit declined to apply the third party doctrine when it found that cell phone users do not "convey"—voluntary or otherwise—CSLI to their service provider. *Id*; *but see Davis*, 785 F.3d at 511 (applying third party doctrine to find no search occurred); *In re Application (Fifth Circuit)*, 724 F.3d at 614.

*Smith* and *Miller* are distinguishable from this case for multiple reasons. First, the 114 logins over a period of 73 days are significantly more revealing than the limited three days of call records in *Smith*. In *Smith,* the defendant dialed each number that appeared in the record the government obtained. Here, the logins and data collected by Microsoft are entirely different in quantity and quality from the data generated by a simple landline phone. The Court should not rely on antiquated cases to determine how

to protect IP login data, especially when it reveals private, protected location information. *See Riley*, 134 S. Ct. at 2488-91 (recognizing that cell phones store "qualitatively different" data that discloses revealing information as compared to physical records of the past).

Second, *Smith* does not reflect the realities of modern society and its intersection with technology. Today, we share much more information about ourselves with third parties merely as a byproduct of the differences in how we perform tasks: we email instead of write a letter, text instead of calling, share documents online instead of buy hard copies; read books on our mobile device instead of on paper, etc. As Justice Sotomayor noted, *Smith*'s basic "premise" is "ill-suited to the digital age, in which people reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks." *Jones*, 132 S. Ct. at 957 (Sotomayor, J. concurring). Honing in on subjective expectations of privacy, Justice Sotomayor doubted "people would accept without complaint the warrantless disclosure" of information to the government from their ISPs like URLs they visit or the email addresses with which they correspond. *Id*.

The court in *Graham* cited four main reasons for deciding that an individual has a reasonable expectation of privacy in location information despite the information being in the hands of a third party. First, the third party automatically generates CSLI without any active submission or participation by the user. *Graham*, 796 F.3d at 354. Second, the CSLI is obtained from calls or text messages even if the user does not answer the call or respond to the text. *Id*. at 355. Third, cell phone users do not "voluntarily" convey

location information simply by choosing to use a device that is pervasive and, for many, essential for active participation in society. *Id.* at 355-56. Lastly, CSLI are "wholly unlike business records, such as 'credit card statements, bank statements, hotel bills, purchase orders, and billing invoices,' which the government 'routinely' obtains from third-party businesses by subpoena" that "merely capture voluntary commercial transactions to which the business and its individual client or customer are parties." *Id.* at 356-57 (quoting *Davis*, 785 F.3d at 506; citing *Miller*, 425 U.S. at 442). The Fourth Circuit noted,

> [S]ociety recognizes an individual's privacy interest in her movements over an extended time period as well as her movements in private spaces. The fact that a provider captures this information in its account records, without the subscriber's involvement, does not extinguish the subscriber's reasonable expectation of privacy. Applying the third-party doctrine in this context would simply permit the government to convert an individual's cell phone into a tracking device by examining the massive bank of location information retained by her service provider, and to do so without probable cause.

*Id.* at 357.

This Court can apply the four reasons cited in *Graham* to this case. First, Microsoft automatically generated a plethora of data every time Mr. Caira logged into his account. *See Christie*, 624 F.3d at 563; *Forrester*, 512 F.3d at 511. Second, any time he logged into his email, despite whether or not he sent an email, Microsoft collected his login IP address information. Third, by logging into his account, he did not voluntarily convey his location information. Lastly, his location information is wholly unlike a business record; it contains intimate, private details about Mr. Caira's exact location at a specific moment in time. Just because technology is capable of disclosing what is otherwise private information about a person's specific location does not mean that a

person has a lesser expectation of privacy under the Fourth Amendment. "The third-party doctrine is intended to delimit Fourth Amendment protections where privacy claims are not reasonable- not to diminish Fourth Amendment protections where new technology provides new means for acquiring private information." *Graham*, 796 F.3d at 360 (citation omitted).

In order to find Mr. Caira, the government used his IP login history to precisely locate him *in his home* and then used this information to conduct further searches.[8] *Cf. Smith*, 442 U.S. at 737 (the government knew where the defendant lived and defendant voluntarily conveyed the numbers he dialed). Even if Mr. Caira knew that Microsoft was keeping data, it was not obvious that they were tracking his location information and storing that information for an extended period of time. It is nonsensical that the government should be able to obtain any record tracked by a third party, because there would almost never be a need to obtain a warrant to obtain private information. Data in the hands of a third party will only increase as technology advances, and unfettered access to this data would inevitably lead to the government's increased access to intimate details of people's lives.

Mr. Caira's case is also distinguishable from *Davis* where the phone company produced 67 days of historical CSLI, but there was no evidence of precise locations. *Davis*, 785 F.3d at 516. The *Davis* court relied upon the fact that CSLI is material

---

[8] There was no reason that the government needed to use an administrative subpoena. This was a standard purchase of a controlled substance. The government could have pursued Mr. Caira the same way that it handles many controlled purchases and followed the purchase and delivery of the Safrole.

distinguishable from the GPS tracking in *Jones*, because the CSLI "does not identify the cell phone user's location with pinpoint precision." *Id*. at 515. In his concurrence, Judge Rosenbaum, although finding that *Smith* "inescapably govern[ed] the outcome of [*Davis*]", stated,

> But when, historically, we have a more specific expectation of privacy in a particular type of information, the more specific privacy interest must govern the Fourth Amendment analysis, even though we have exposed the information at issue to a third party by using technology to give, receive, obtain, or otherwise use the protected information. In other words, our historical expectations of privacy do not change or somehow weaken simply because we now happen to use modern technology to engage in activities in which we have historically maintained protected privacy interests. Neither can the protections of the Fourth Amendment.

*Davis*, 785 F.3d at 524-25, 532 (Rosenbaum, J. concurring).

Technological advances allow data to be constantly tracked, whether it be through email, cell phone, internet, or other device. The application of the third-party doctrine to locational data "fails to recognize the intrusive nature of this data in comparison with previous technologies." Vesalga, 43 Golden Gate U. L. Rev. at 479. The nature of information conveyed from IP addresses is much more extensive than the addresses on an envelope or call logs from an analog phone. *See id*. Aside from the postmark, an envelope includes only the information the sender wishes to include. *Id*. A call log reveals only that the person was at a particular location at a certain time and what phone number he or she called. *Id*. IP addresses reveal "a user's precise location or locational movements over a period of time." *Id*.

Although internet and email users may be willing to share data with their ISP for marketing or an improved user experience, it does not mean that they have

relinquished all privacy to warrantless searches by the government. *See id.* "It defies all logic and commonsense to argue that Internet users, who share personal information with trusted websites in exchange for free or improved services should assume that this information may be shared with the government…" without a warrant. *Id*. at 480.

Disclosure of this data is not a choice if people want to use email or the internet. In *Smith*, Justices Marshall and Brennan dissented, noting that it is unacceptable to force people to accept the risk or surveillance or forgo the use of the phone. *Smith*, 442 U.S. at 750 (Marshall, J., dissenting). For most people, this is not a choice; email and internet use is virtually mandatory in nearly every profession. *See* Vesalga, 43 Golden Gate U. L. Rev. at 481. "It is untenable to require that Americans forgo use of the Internet to protect their privacy." *Id*. In *Davis*, Judge Rosenbaum concurred in the outcome but expressed that the third-party doctrine warranted additional consideration and discussion. *See Davis*, 785 F.3d at 525 (Rosenbaum, J. concurring). He stated

> In our time, unless a person is willing to live 'off the grid,' it is nearly impossible to avoid disclosing the most personal of information to third-party providers on a constant basis, just to navigate daily life. And the thought that the government should be able to access such information without the basic protection that a warrant offers is nothing less than chilling.

*Id*.

Some courts have concluded that email and internet users have no expectation of privacy in their IP address. However these cases are distinguishable from the case at hand. First, a user's IP address and IP login history are not the same. When users sign up for an email address, the email provider collect the IP address where the email was

registered. (SA 24; R. 162-1:4). This is part of the basic subscriber information. Similarly, when subscriber information is collected from an ISP, the ISP provides the current IP address assigned to the account (i.e. temporarily assigned network address). (SA 32; R. 162-1:12). A login history of IP addresses provides information regarding every IP address where the user logged into the email account.

In an unpublished decision, the Eleventh Circuit held that Beckett had no expectation of privacy in any non-content information obtained from the ISP and phone companies.[9] *Beckett*, 369 Fed. Appx. at 56. Although the police requested this information through a letter, they obtained the information based on exigent circumstances. *Id.* at 53, 56. Nevertheless, the court concluded that the police had no access to content information and the identifying information transmitted during internet usage was necessary for ISPs to perform their services. *Id.* at 56. No exigent circumstances were present in Mr. Caira's case.

The other two cases that have found no expectation of privacy in an IP address deal only with subscriber information. *See United States v. Suing*, 712 F.3d 1209, 1213 (8th Cir. 2013) (no expectation of privacy in his subscriber information, including his IP address and name, from third party); *Christie*, 624 F.3d at 573-74 (subscriber information, including IP address, given to a third party, is not protected by the Fourth Amendment). Under current case law, users have no expectation of privacy in

---

[9] According to 11th Cir. R. 36-2, unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.

subscriber information.[10] If the government obtained Mr. Caira's IP address from the IP address where he registered his Hotmail email address, there would be no argument. However, the government reached far beyond that information to acquire every IP address where Mr. Caira had logged into his email.

*Forrester* is also distinguishable, because not only did the government apply for and receive court permission to install a pen register, it also never conducted the surveillance to locate the defendant in a protected space. *Forrester*, 512 F.3d at 505-06. In *Forrester*, the court dealt only with constitutionality of computer surveillance techniques that reveal the to/from addresses of email addresses, the IP addresses of websites visited, and the total amount of data transmitted to or from an account. *Id*. The Ninth Circuit held that these computer surveillance techniques were not searches under the Fourth Amendment but explained that the holding extended only to these particular techniques. *Id*. at 511 (stating that it was not implying that more intrusive techniques are constitutional).

Despite being in the hands of a third party, Mr. Caira had a reasonable expectation of privacy in his IP login history. "The Fourth Amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens." *Kyllo*, 533 U.S. at 40 (internal quotation omitted). The primary reason for the warrant requirement is to interpose a "neutral and

---

[10] Mr. Caira is not arguing that he has an expectation of privacy in his subscriber information.

detached magistrate" between the citizen and "the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14 (1948). "Those suspected of drug offenses are no less entitled to that protection than those suspected of nondrug offenses." *Karo*, 468 U.S. at 717. Here, an administrative subpoena violated the requirements of the Fourth Amendment.

**III. If this Court holds that the government violated Mr. Caira's Fourth Amendment rights when it obtained his IP login history without a warrant, all "fruits" of the unlawful search should be suppressed.**

Any evidence seized during an unlawful search cannot constitute proof against the victim of the search. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). The government obtained Mr. Caira's home IP address through the use of an administrative subpoena to Microsoft. If this Court holds that to be an unlawful search, any evidence obtained as a direct result of the unconstitutional search was therefore inadmissible under the "fruits of the poisonous tree" doctrine. *See id.* at 484-85. This includes, but is not limited to, the administrative subpoena issued to Comcast and later trash pulls from Mr. Caira's residence. These searches are rooted in the government's discovery of Mr. Caira's identity and home address. Any issue regarding further searches should be remanded to the district court with instructions that any fruits of the administrative subpoena to Microsoft should be suppressed.

**IV. Mr. Caira's sentence should be vacated and remanded for a full resentencing, because the district court failed to present what terms of supervised release it intended to impose and provide any reasoning why it intended to impose them.**

### A. Standard of Review

This Court has yet to decide whether the failure to object to the terms of supervised release should be reviewed under forfeiture or the plain error standard. *United States v. Hinds*, 770 F.3d 658, 665 (7th Cir. 2014). In *Hinds*, the Court found that because the defendant would prevail under either the plain error standard or the abuse of discretion standard, there was no need to decide which one applied. *Id.* The same is true here.

Mr. Caira did not object to the district court's announcement at sentencing that the standard conditions of supervised release applied. The district court never mentioned the one special condition of supervised release, so no objection was necessary. *See* Fed. R. Crim. Proc. 51(b). Nevertheless, where the district court failed to give any reasoning for the imposition of the standard or special condition of supervised release, this Court's review should be only whether the district court abused its discretion. *See United States v. Thompson*, 777 F.3d 368, 377-78 (7th Cir. 2015); *United States v. Evans*, 727 F.3d 730, 732 (7th Cir. 2013) (reviewing preserved objection to new condition of supervised release for abuse of discretion); Fed. R. Crim. Proc. 51(b) ("[e]xceptions to rulings or orders of the court are unnecessary").

### B. Legal Principles

Supervised release, along with any conditions, is a part of the defendant's sentence, and therefore the sentencing judge must evaluate the imposition of any

conditions of supervised release in light of the sentencing factors in 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220 (2005); *Thompson*, 777 F.3d at 373-74; *United States v. Johnson*, 756 F.3d 532, 539 (7th Cir. 2014). Conditions of supervised release "must be reasonably related to (1) the defendant's offense, history and characteristics; (2) the need for adequate deterrence; (3) the need to protect the public from further crimes of the defendant; and (4) the need to provide the defendant with treatment." *United States v. Goodwin*, 717 F.3d 511, 522 (7th Cir. 2013) (internal quotation omitted); *Thompson*, 777 F.3d at 374; U.S.S.G. § 5D1.3(b); 18 U.S.C. § 3583(c). Special conditions "must not involve a greater deprivation of liberty than is reasonably necessary to achieve the goals of deterrence, incapacitation, and rehabilitation." *Johnson*, 756 F.3d at 539.

Furthermore, as part of the sentence, "the imposition of conditions of supervised release is subject to the further requirements that 'the court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence…" 18 U.S.C. § 3553(c). All conditions must be "consistent with any pertinent statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(3); *Goodwin*, 717 F.3d at 522.

**C. The district court erred when it ordered 13 standard conditions and 1 special condition of supervised release, because the court failed to provide any reason for imposing the conditions, pursuant to 18 U.S.C. § 3553(a).**

Mr. Caira never saw a list of the Probation Office's proposed conditions until the judgment was entered and signed by the district court. (SA 3; R. 334: 3). The PSR said nothing about any conditions of supervised release. (R. 248: 24). At sentencing, the district court made no mention of any of the standard conditions of supervised release that it intended to impose. It was only after sentencing that Mr. Caira received a copy of the judgment, including the standard conditions the district court included, and learned for the first time that the additional term was included: "The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and random drug tests thereafter, conducted by the U.S. Probation Office, not to exceed 104 tests per year." (SA 3-4; R. 334: 3-4).

The district court never provided any explanation as to how these standard conditions or the additional special condition were reasonably related to Mr. Caira's offense and involved no greater deprivation of liberty than was reasonably necessary. *See Thompson*, 777 F.3d at 376. "A judge cannot properly decide what sentence to impose without consideration of the sentencing factors in 18 U.S.C. § 3553(a)." *Id.* at 377. Furthermore, this Court has noted that seven of these standard conditions are vague, ambiguous or broad, including forbidding the defendant to associate with any person convicted of a felony, notifying third parties of risks that may be occasioned by

defendant's criminal history, statements including "as directed by the probation officer," changes in employment, "frequenting" places where controlled substances are present, answering all inquiries by the probation officer, and allowing the probation officer to visit at any time. *Id.* at 376-380.

The district court failed to include in the oral sentence the special condition of supervised release requiring that the defendant submit a drug test within 15 days of release of imprisonment and random drug tests thereafter, up to 104 tests per year. The oral pronouncement of the sentence takes precedence over the written, and therefore, this special condition should not be included. *Thompson*, 777 F.3d at 376; *United States v. Johnson*, 765 F.3d 702, 710–11 (7th Cir. 2014). In addition, there was no basis to include this special condition. There was no evidence that Mr. Caira had any history of substance abuse. (R. 248: 19-20).

In *Thompson*, even when the government claimed that the argument had been waived, this Court refused to find waiver and instead vacated the conditions. *Id.* at 377-78. The same result should be applied in this case. The district court neither presented what terms of supervised release it intended to impose nor provided him with any reasoning why it intended to impose them. Therefore, the conditions should be vacated and a full resentencing ordered.

## CONCLUSION

For all of the foregoing reasons, Mr. Caira respectfully requests that this court vacate the district court's denial of his motion to suppress evidence obtained through the administrative subpoenas and remand the case for further proceedings. Alternatively, Mr. Caira respectfully requests that this Court vacate his supervised release conditions and remand for a full resentencing hearing.

Respectfully submitted,

/s/ Hannah Valdez Garst

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

  _X_this brief contains 11,708 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii);

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

  _X_this brief has been prepared in a proportionally spaced typeface using Word Perfect 12 in 12 point Bookman Antiqua font.

 /s/ Hannah Valdez Garst
Attorney for Defendant-Appellant Frank Caira

Dated:  October 30, 2015

**CIRCUIT RULE 31(e) CERTIFICATION**

The undersigned, counsel for Defendant-Appellant, hereby certifies that I have filed electronically, pursuant to Circuit Rule 31(e), versions of the brief and all of the appendix items that are available in non-scanned PDF format.

/s/ Hannah Valdez Garst

Dated: October 30, 2015

No. 14-1003

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

FRANK CAIRA,

Defendant-Appellant.

---

On Appeal from the United States District Court for
the Northern District of Illinois
Case No.  08 CR 1052
Honorable Rebecca R. Pallmeyer, Judge Presiding.

---

APPELLANT'S REQUIRED APPENDIX

---

Hannah Valdez Garst
*Attorney for Frank Caira*
Law Offices of Hannah Garst
2300 Barrington Rd.
Suite 140
Hoffman Estates, IL 60169
(773) 248-6504
hannahgarst@garstlaw.com

No. 14-1003

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

FRANK CAIRA,

Defendant-Appellant.

_____

On Appeal from the United States District Court for
the Northern District of Illinois
Case No.  08 CR 1052
Honorable Rebecca R. Pallmeyer, Judge Presiding.

_____

CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30

The undersigned, counsel for Defendant-Appellant, Frank Caira, hereby states that all of the materials required by Circuit Rule 30(a) and 30(b) are included in the Appendix to this brief.

BY: /s/ Hannah Valdez Garst
*Attorney for Frank Caira*
Law Offices of Hannah Garst
2300 Barrington Rd.
Suite 140
Hoffman Estates, IL 60169
(773) 248-6504
hannahgarst@garstlaw.com

Dated October 30, 2015

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that she has caused a copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system and served, by the electronic filing system, upon all attorneys of record, on this 30th day of October, 2015.

BY: /s/ Hannah Valdez Garst
*Attorney for Frank Caira*
Law Offices of Hannah Garst
2300 Barrington Rd.
Suite 140
Hoffman Estates, IL 60169
(773) 248-6504
hannahgarst@garstlaw.com

**APPENDIX**

Judgment and Conviction (R. 334) ....................................................................... SA 1-9

Motion to Suppress Evidence Obtained Through Administrative Subpoena
(R. 162, 162-1) ................................................................................................. SA 10-32

Government's Response to Motion to Quash (R. 173) ............................................. SA 33-38

Reply to Governments Response to Motion to Quash (R. 177) ................................ SA 39-46

District Court Order (R. 188) ............................................................................... SA 47-52

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
           Sheet 1

# UNITED STATES DISTRICT COURT

Northern District of Illinois, Eastern Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br>**v.**<br>Frank Caira | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number:   08 CR 1052-1<br>USM Number:   40926-424<br><br>*Pro Se*<br>Defendant's Attorney |

## THE DEFENDANT:

x pleaded guilty to count(s)   1s, 2s

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(C) | Conspiracy to Manufacture, Distribute and Possess with Intent to Distribute MDMA or Ecstasy | Dec. 2008 | 1s |
| 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(B) | Conspiracy to Manufacture, Distribute and Possess with Intent to Distribute 100 or more Marihuana Plants | Dec. 2008 | 2s |

   The defendant is sentenced as provided in pages 2 through   6   of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

x Count(s)   1, 2, 3-4, 3s, 4s      ☐ is   x are  dismissed on the motion of the United States.

   It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

December 13, 2013
Date of Imposition of Judgment

Signature of Judge

Rebecca R. Pallmeyer, U. S. District Judge
Name and Title of Judge

December 18, 2013
Date

SA 1

AO 245B    (Rev. 09/11) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page    2    of    6

DEFENDANT:         Frank Caira
CASE NUMBER:       08 CR 1052-1

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

240 Months on Count 1s; 60 Months on Count 2s to run consecutive to Count 1s; and to run concurrent to case 10 CR 35-1.

☐  The court makes the following recommendations to the Bureau of Prisons:

X   The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

   ☐  at _____ ☐ a.m.  ☐ p.m.  on _____ .

   ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐  before 2 p.m. on _____ .

   ☐  as notified by the United States Marshal.

   ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

SA 2

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
           Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___6___

DEFENDANT:        Frank Caira
CASE NUMBER:      08 CR 1052-1

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

5 years on Count 1s; 5 years on Count 2s to run concurrently.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐  The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

X  The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

X  The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☐  The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐  The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

SA 3

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
           Sheet 3A — Supervised Release

Judgment—Page    4    of    6

DEFENDANT:        Frank Caira
CASE NUMBER:      08 CR 1052-1

## ADDITIONAL SUPERVISED RELEASE TERMS

The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and random drug tests thereafter, conducted by the U.S. Probation Office, not to exceed 104 tests per year.

SA 4

DEFENDANT:    Frank Caira
CASE NUMBER:    08 CR 1052-1

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $  200.00 | $ Waived | $ N/A |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| **TOTALS** | $ _____ | $ _____ | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the    ☐ fine  ☐ restitution.

☐ the interest requirement for the    ☐ fine    ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

SA 5

Judgment — Page    6    of    6

DEFENDANT:        Frank Caira
CASE NUMBER:      08 CR 1052-1

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**    x    Lump sum payment of $    200.00    due immediately, balance due

☐ not later than _____ , or
☐ in accordance        ☐ C,    ☐ D,    ☐ E, or    ☐ F below; or

**B**    ☐    Payment to begin immediately (may be combined with    ☐ C,    ☐ D, or    ☐ F below); or

**C**    ☐    Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
_____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**    ☐    Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
_____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
term of supervision; or

**E**    ☐    Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**    ☐    Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during
imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial
Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐    Joint and Several

Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount,
and corresponding payee, if appropriate.

☐    The defendant shall pay the cost of prosecution.

☐    The defendant shall pay the following court cost(s):

x    The defendant shall forfeit the defendant's interest in the following property to the United States:
See attached order.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

SA 6

08UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.  08 CR 1052-1 |
| | ) | Judge Rebecca R. Pallmeyer |
| FRANK CAIRA | ) | |

### PRELIMINARY ORDER OF FORFEITURE

This cause comes before the Court on motion of the United States for entry of a preliminary order of forfeiture as to specific property pursuant to the provisions of Title 21, United States Code, Section 853(a)(1) and (2) and Fed. R. Crim. P. 32.2, and the Court being fully informed hereby finds as follows:

(a)     On June 17, 2009, a superseding indictment was returned charging defendant FRANK CAIRA with violations of the Controlled Substances Act pursuant to the provisions of 21 U.S.C. § 846, among other violations;

(b)     The superseding indictment sought forfeiture to the United States of certain property pursuant to the provisions of 21 U.S.C. § 853(a)(1) and (2);

(c)     On March 8, 2013, pursuant to Fed R. Crim. P. 11, defendant FRANK CAIRA entered a voluntary plea of guilty to Counts One and Two of the superseding indictment charging him with violations of 21 U.S.C. § 846;

(d)     Pursuant to the terms of the plea agreement and as a result of his violations of 21 U.S.C. § 846, defendant FRANK CAIRA agreed that funds in an amount to be determined by the Court at the time of sentencing, are subject to forfeiture pursuant to the provisions of 21 U.S.C. § 853(a)(1) and (2), as property constituting or derived from proceeds obtained, directly or indirectly, as a result of the defendant's violations;

SA 7

(e)     Defendant FRANK CAIRA further agreed to the entry of a forfeiture judgment pursuant to the provisions of 21 U.S.C. § 853(a)(1) and (2);

(f)     If any of the funds in the amount of the money judgment entered against defendant FRANK CAIRA, as a result of any act or omission of the defendant:

1.     cannot be located upon the exercise of due diligence;

2.     has been transferred or sold to, or deposited with, a third party;

3.     has been placed beyond the jurisdiction of the Court;

4.     has been substantially diminished in value, or

5.     has been commingled with other property which cannot be divided without difficulty;

the United States shall request that this Court order the forfeiture of any other property belonging to defendant FRANK CAIRA up to the value of the money judgment, pursuant to 21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2, in order to satisfy the money judgment entered by the Court;

(g)     Pursuant to Title 21, United States Code, Section 853, and Subdivision (b)(3) of Rule 32.2 of the Federal Rules of Criminal Procedure, upon entry of this preliminary order of forfeiture, the Court hereby authorizes the Attorney General or his designated representatives to conduct discovery to identify or locate property subject to forfeiture, including substitute assets, and to seize property ordered forfeited upon such terms and conditions as set forth by the Court;

(h)     The United States requests that the terms and conditions of this preliminary order of forfeiture entered by the Court be made part of the sentence imposed against defendant FRANK CAIRA and included in any judgment and commitment order entered in this case against him.

Accordingly, it is hereby ORDERED, ADJUDGED and DECREED:

1.      That, a judgment is entered against defendant FRANK CAIRA in the amount of $300,000;

2.      That, pursuant to the provisions of 21 U.S.C. § 853(a)(1) and (2) and Fed. R. Crim. P. 32.2, all right, title and interest of defendant FRANK CAIRA in the funds in the amount of $300,000, is hereby forfeit to the United States of America for disposition according to law;

3.      That, if by an act or omission on the part of defendant FRANK CAIRA funds in the amount of $300,000 cannot be located to satisfy the forfeiture judgment; pursuant to the provisions of 21 U.S.C. § 853(p), the United States has the authority to forfeit substitute assets in the amount of $300,000 to satisfy the money judgment entered by this Court;

4.      That, should assets become available to satisfy the forfeiture judgment in the future, the United States shall at that time file a motion for substitution of assets before this Court requesting permission to seize such assets and publish notice of the United States' intent to forfeit the property in satisfaction of the forfeiture money judgment entered by the Court;

5.      That, the terms and conditions of this preliminary order of forfeiture are part of the sentence imposed against defendant FRANK CAIRA and shall be made part of any judgment and commitment order entered in this case against him; and

6.      This court shall retain jurisdiction in this matter to take additional action and enter further orders as necessary to implement and enforce this forfeiture order.

_____
REBECCA R. PALLMEYER
United States District Judge

DATED:   December 13, 2013

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 1052 |
| vs. | ) | |
| | ) | Hon. Rebecca R. Pallmeyer |
| FRANK CAIRA | ) | |

**MOTION TO SUPRESS EVIDENCE OBTAINED THROUGH ADMINISTRATIVE
SUBPOENA**

COMES NOW the defendant, FRANK CAIRA ("Mr. Caira"), by and through his
attorney, Beau B. Brindley, and respectfully moves this court to suppress evidence obtained
through the issuance of administrative subpoenas. In support, Mr. Caira states the following:

**Introduction**

At bottom, this case represents a situation where the government was able to obtain, via
administrative subpoena, an individual's home address based on information regarding his email
account. In order to accomplish this feat, the government subpoenaed from the email service
provider records that went well beyond basic subscriber information. Only by subpoenaing and
receiving a detailed history of IP addresses accessing Mr. Caira's personal e-mail account was
the government able to ascertain his home address. The government's use of an administrative
subpoena to essentially effectuate surveillance of Mr. Caira's access to his personal e-mail
violated the Fourth Amendment. As such, the fruits of the unconstitutional searches should be
suppressed.

**Background**

Mr. Caira initially filed a motion to quash the warrant obtained in this case allowing the
government to search Hotmail records relating to a particular e-mail account. The Court initially

1

granted that motion. However, the government later indicated that it did not intend to use any of the information obtained from the warrants. Instead, the government wishes to rely on information obtained via administrative subpoena.

Between July 9 and September 17, 2008, an unknown individual repeatedly emailed a DEA-controlled website based in Hanoi, Vietnam, purportedly in an effort to purchase and import Sassafras Oil, a list I chemical. As indicated by SA Smith, these emails were sent from the address "gslabs@hotmail.com," which was registered in the name of "Mr Jeff Hurst." However, the emails were each either unsigned or signed only with the name "steve."

According to the affidavit, a series of emails were exchanged between gslabs@hotmail.com and an undercover agent posing as "Miss Tran Thuy." These emails included discussions about the price for 55 gallons of sassafras oil and the shipping cost to send the oil to an address on Harlem Avenue in Chicago, IL. "Steve" also provided a telephone number, at the undercover agent's request, so that he could be contacted about the status of the shipment. A different undercover agent, calling himself "Todd," attempted to contact the number provided by "steve" but was only able to leave voicemails. Further emails concerned arranging payment to "Todd" and obtaining his contact information.

Sassafras oil is primarily composed of safrole, a list I chemical under Title 21, United States Code, § 802(34)(Q). Pursuant to 21 USC § 957(a), registration with the Attorney General's office is required to import any list I chemical, such as safrole, into the United States. Safrole is used in the manufacture of MDMA ("ecstasy"). However, it is also an important raw material for the chemical industry, used in pesticides and as a fragrance in household products such as floor waxes, polishes, soaps, detergents, and cleaning agents. *Piper hispidinervum*: A Sustainable Source of Safrole Rocha S.F.R. and Lin Chau Ming. 1999. In: J. Janick (ed.),

2

Perspectives on new crops and new uses. ASHS Press, Alexandria, Virginia; available online at http://www.hort.purdue.edu/newcrop/proceedings1999/v4-479.html.

According to SA Smith's affidavit, DEA records indicated that Jeff Hurst, the name listed on the gslabs@hotmail.com email address, was not registered to import safrole. These records also indicated that GS Labs was not registered to import safrole, and the Harlem Avenue address was not associated with anyone who was so registered to import safrole.

On September 2, 2008, the government issued an administrative subpoena to Microsoft Corporation. The subpoena directed Microsoft to "disclose all basic subscriber information, including the subscriber's name, address, length of service (including start date) and types of services used including any temporarily assigned network address, Passport.net accounts, means and source of payment (including credit card or bank account number), and the account login histories (IP Login history) of, the following email account(s): glabs@hotmail.com." See Exhibit A. The subpoena went on to request that Microsoft "not disclose the existence of this request or investigation for an indefinite time period." See Exhibit A.

In response to the government's subpoena, Microsoft turned over a number of documents. First, Microsoft turned over basic user info. See Exhibit B. The basic user info included the first and last name, state, zip code, country, IP address from which the account was registered, the date the account was created, as well as other information. See Exhibit B. This information did not include the IP address connected with Mr. Caira's residence. However, as requested in the government subpoena, Microsoft also turned over other more detailed information about the user's online activities. Microsoft was also compelled to turn over the entire IP login history for the account. See Exhibit C. This included a series of seventy-five logins with corresponding IP addresses and dates and times. These logins showed the various IP

addresses from which the gslabs hotmail account was accessed. One of the IP addresses frequently used to access the account was IP address 24.15.180.222.

The government took the IP address obtained from the detailed login history and issued another subpoena—this time to Comcast IP Services, the owner of the IP Address in question. See Exhibit D. The subpoena requested that Comcast "furnish records related to IP Address 24.15.180.222 to include: Any and all e-mail addresses associated with this IP Address; a) customer name and other user name(s); b) addresses; c) records of session times and durations; d) length of service (including start date) and types of service used; e) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and f) means and source of payment for such service (including credit card or bank account numbers)." Exhibit D. Again the subpoena requested Comcast "not disclose the existence of this request or investigation for an indefinite time period." Exhibit D.

In response to the government's subpoena, Comcast turned over the subscriber information for the IP address on the particular day requested. See Exhibit E. This information included the subscriber name, service address, telephone number, type of service, account number and creation date, e-mail user IDs, Current IP address, and method of payment. Exhibit E. The government used the address obtained from this subpoena to conduct further investigation that resulted in trash pulls at Mr. Caira's residence.

### Argument

The Warrant Clause of the Fourth Amendment requires that, absent certain exceptions that are not applicable here, police must obtain a warrant from a neutral and disinterested magistrate before commencing a search. *See Jones v. Wilhelm*, 425 F.3d 455, 462 (7th Cir. 2005). Such a warrant is required prior to the disclosure of the contents of an electronic

communication by the provider of an electronic communication service. 18 USC §2703(a). A warrant shall not issue unless there is probable cause, as typically set forth in the warrant affidavit, to justify the search. *See United States v. Harris*, 464 F.3d 733, 737 (7th Cir. 2006); U.S. Const. Amend. IV. Probable cause is established when, considering the totality of the circumstances, there is sufficient evidence to cause a reasonably prudent person to believe that a search will uncover evidence of a crime. *See United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000).

In this case, it is uncontested that the government did not obtain a valid search warrant prior to issuing the subpoenas to Microsoft and Comcast. Thus, the only question is whether the government's use of the administrative subpoenas in this case constituted a search. As the Supreme Court recently affirmed in the test for determining whether government conduct constitutes a search is the familiar *Katz* test. *United States v. Jones*, 132 S. Ct. 945 (2012). The test asks whether the defendant had a subjective expectation of privacy in the materials searched or seized and whether that expectation is one society accepts as reasonable. *California v. Ciraolo*, 476 U.S. 207, 211 (1986). If the answer to those questions is yes, the conduct is a search within the meaning of the Fourth Amendment.

**A.      Mr. Caira Had A Subjective Expectation Of Privacy In The Details Of His Personal Email Account.**

In this case the government sought and received both basic subscriber info as well as a detailed history of every time the account had been accessed and from what IP address. IP addresses are not just random strings of numbers; they also provide meaningful information about a person's actual physical location as well as the network and even the specific machine they are using. As the Second Circuit explained:

5

> The Internet is comprised of numerous interconnected communications and computer networks connecting a wide range of end-users to each other. Every end-user's computer that is connected to the Internet is assigned a unique Internet Protocol number (IP address), such as 123.456.78.90, that identifies its location (*I.e.*, a particular computer-to-network connection) and serves as the routing address for email, pictures, requests to view a web page and other data sent across the Internet from other end-users.

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 409-410 (2d Cir. 2004). "IP Addresses can be matched up with specific geographic designations, using a publicly available database operated by the American Registry for Internet Numbers." Sony Music Entertainment, Inc. v. Does 1-40, 326 F.Supp 2d 556, 567 (S.D.N.Y. 2004). The geographic designations "indicate the 'likely' locations of the residences or other venues where defendants used their Internet-connected computers." *Id*.

Mr. Caira clearly had a subjective expectation of privacy in the detailed history of locations from which he accessed his personal e-mail account. E-mail accounts and the use of email has become "so pervasive that some persons may consider [it] to be [an] essential means or necessary instrument[ ] for self-expression, even self-identification." *City of Ontario v. Quon*, 130 S.Ct. 2619, 2630 (2010). In *United States v. Warshak*, the Sixth Circuit held that the defendant "plainly manifested an expectation that his emails would be shielded from outside scrutiny." 631 F.3d 266, 284 (6th Cir. 2010). Here, we are not dealing with the revelation of a single IP address or revelation of basic user data. Instead, we dealing with the revelation of a detailed history of every IP address used to access the account—information that can and did lead to the precise identification of the user's home residence from which he sometimes accessed the email account. Just as in *Warshak,* it is "highly unlikely that [the defendant] expected [the information] to be made public." *Id*. No reasonable person expects that the all of the locations from which he accesses his private email account will ever be made public. Therefore, Mr. Caira

6

had a subjective expectation that information identifying each of the locations from which he accessed his private email account would remain private.

**B.      Mr. Caira's Expectation Of Privacy Was Reasonable.**

The Second inquiry in the *Katz* test is whether society is prepared to recognize a defendant's expectation as reasonable. *Smith v. Maryland*, 442 U.S. 735, 740 (1979). Given the prominent role that e-mail has assumed in society, an expectation of privacy in the detailed information regarding email use is reasonable. As the Sixth Circuit noted in *Warshak*, "the Fourth Amendment must keep pace with the inexorable march of technological progress, or its guarantees will wither and perish." (*citing Kyllo v. United States*, 533 U.S. 27, 34 (2001)). In the course of Fourth Amendment jurisprudence, the Court has sometimes emphasized that people have a reduced expectation of privacy in information that is knowingly disclosed to a third-party. *See, e.g., United States v. Miller*, 425 U.S. 435 (1976) (finding that bank depositor did not have a reasonable expectation of privacy in certain bank records). However, the mere fact that certain information can be observed or collected by a third party is not sufficient to remove an area from the Fourth Amendment's protections. For instance, in *Katz*, the Court found that the defendant had a reasonable expectation of privacy in a phone conversation conducted in a public phone booth. *Katz v. united States,* 389 U.S. 347, 352 (1967). The Court made this finding despite the fact that the phone company could monitor the call. *Smith*, 442 U.S. at 746-747 (Stewart, J., dissenting). Most recently in *Jones*, the Court found that GPS tracking of a car violated the Fourth Amendment. The Court found this violation despite the fact the movements of the car could have been observed by the public. 132 S.Ct. 945.

The conclusion that the detailed information obtained via administrative subpoena in this case was protected by the Fourth Amendment is also supported by the Third Circuit's opinion in

*In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't*, 620 F.3d 304 (3d Cir. 2010) ("*Third Circuit Opinion*"). In that case, the Third Circuit was confronted with a request to obtain cell site location information from a cell phone company. The Court concluded that it "cannot reject the hypothesis that CSLI [cell site location information] may, under certain circumstances, be used to approximate the past location of a person." *Id.*, at 312. The Court analogized this kind of information to "a tracking device which provides information as to the actual whereabouts of the subject." *Id.*

IP address information, especially extensive historical IP address information like that obtained by the government in this case, provides similar location tracking capabilities. As discussed above, an IP address can be used to identify the physical location of the user. A person can obtain this geographical information from publicly available databases. And it is clear that even beyond that, it is the regular practice of the government to utilize IP addresses to obtain physical location information. Certainly, every person does not presume that by sending an email they are communicating to the public their present physical location or the location of their home. Part of the allure of email and the Internet is the ability to engage in meaningful interactions without the risks associated with revealing personal or private information. It is reasonable to expect that such information will remain private.

As the Court held in *Miller*, transactional information communicated to a third-party company is not subject to Fourth Amendment Protections. This is because this is "information voluntarily conveyed to the [company] and exposed to their employees in the ordinary course of business." 425 U.S. at 442. But the information that the government obtained in this case was not the basic subscriber information, which would be analogous to the information obtained in *Miller*. The basic subscriber info only included the IP address from which the account was

registered and the name and other biographical information. Importantly, the IP address that ultimately led the government to Mr. Caira's home was *not* the one contained in the basic user information that was first provided to the government. Exhibit A. Instead, the home address was only obtained from the detailed IP address history, which was obtained separately from the basic user information, and which gave the government the ability to track all of Mr. Caira's physical locations when he accessed his email account.

The government's subpoena was also exceedingly broad in this case. The government had engaged in e-mail correspondence with the account for which it was subpoenaing records. The government could have subpoenaed records based on the specific dates and times that the relevant e-mails were sent. But it did not. Instead, the government requested the entire log-in history for the account, thereby obtaining the means to electronically track all of the locations from which Mr, Caira accessed his email. Additionally, the government took no steps to avoid obtaining information beyond basic user information. The government specifically requested "the account login history." It did not limit the way in which this information was to be collected. It did not inquire as to what kinds of records were kept. The government cannot merely label detailed information that electronically tracks an individual's whereabouts each time he accessed his email account "basic subscriber information" and, by means of that self-serving labeling process, deprive the information of protection under the Fourth Amendment and other laws.

Congress has helped to define the reasonable expectation of privacy in electronic communications by enacting the Stored Communications Act. Under that act, a government agency may obtain stored electronic communications only by obtaining a warrant, except in certain situations. 18 U.S.C. § 2703. One of those situations is when the government seeks only

9

basic subscriber information. The statute specifically sets forth the information that can be obtained:

(A) name; (B) address; (C) local and long distance telephone connection records, or records of session times and durations; (D) length of service (including start date) and types of service utilized; (E) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and (F) means and source of payment for such service (including any credit card or bank account number). *Id.* None of this would permit the government to obtain a detailed history of every IP address used to access the account and dates when these addresses were used. What the government is entitled to obtain under the act absent a warrant is the basic user info contained in Exhibit A. But in this case, they went further and sought extensive information about every login and every IP address used for the account. And it was that very act of going further than basic subscriber information that allowed them to obtain the information that led them to Mr. Caira's residence.

Administrative subpoenas are an important investigative tool for the government, but they are also a dangerous one. They are served with absolutely no judicial oversight. The companies they are served on are told not to inform anyone of the government's investigation. Because of the ability to use administrative subpoenas in absolute secrecy, it is essential that their use comply with the Fourth Amendment. If the government is able to obtain information from Internet companies beyond basic user data, the implications are grave. The government could easily obtain a history of websites visited and the location from which they were visited and electronically track the whereabouts of an individual by obtaining information beyond basic subscriber info. And, as in this case, they can take an email address and determine a person's physical location. That kind of electronic tracking of an individual's whereabouts is no different

than the electronic GPS tracking that the Supreme Court found to violate a defendant's Fourth Amendment rights in *Jones.* 132 S. Ct. 945 (2012). The government, likewise, violated Mr. Caira's Fourth Amendment rights in this case. The government's use of the administrative subpoenas in this case violated a reasonable expectation of privacy that Mr. Caira had in the electronic information identifying his whereabouts each time he accessed his email. Consequently, the Court should suppress all evidence obtained as a result of these administrative subpoenas due to a violation of the Fourth Amendment.

WHEREFORE, Mr. Caira respectfully asks this Court exclude all evidence gathered as a result of the execution of the administrative subpoenas, including any fruits of that evidence obtained at a later point in the investigation.

Respectfully Submitted by:

s/ Beau B. Brindley
Attorney for Defendant,
FRANK CAIRA

LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd, Suite 1410
Chicago, Illinois 60604
(312) 765-8878

SA 20

# Exhibit A

## U.S. DEPARTMENT OF JUSTICE/DRUG ENFORCEMENT ADMINISTRATION
## SUBPOENA

In the matter of the investigation of
Case No: 11-08-0309
Subpoena No. 11-08-137666

**TO:** Microsoft Corporation
ATTN: MSN Custodian of Records- Legal Compliance
AT: 1 Microsoft Way
Redmond WA 98052-6399
425-722-1299 Phone
425-727-3490 Fax

**PHONE:** 6506937066

**FAX:** 6506937061

**GREETING:** By the service of this subpoena upon you by SA Bagley / IA Patricia Bombard who is authorized to serve it, you are hereby commanded and required to appear before SA Bagley / IA Patricia Bombard, an officer of the Drug Enforcement Administration to give testimony and to bring with you and produce for examination the following books, records, and papers at the time and place hereinafter set forth:

Pub. L. 107-56, sec 210, 115 Stat. 272 (Oct. 26, 2001), please disclose all basic subscriber information, including the subscriber''s name, address, length of service (including start date) and types of services used including any temporarily assigned network address, Passport.net accounts, means and source of payment (including credit card or bank account number), and the account login histories (IP Login history) of, the following email account(s): gslabs@hotmail.com

This is only an investigation, and your subscriber retains his or her presumption of innocence. However, to avoid compromising this investigation, we request that your company not disclose this request to the subscriber. If possible please respond via electronic media (i.e. floppy disc or cd-rom)

Please do not disclose the existence of this request or investigation for an indefinite time period. Any such disclosure could impede the criminal investigation being conducted and interfere with the enforcement of the Controlled Substances Act.

Please direct questions concerning this subpoena and/or responses to IA Patricia M. Bombard, 312-603-8014. In lieu of personal appearance, please email records to pbombard@chicago-hidta.org or fax to 312-603-9923

Place and time for appearance: At 69 W. WASHINGTON CHICAGO, IL 60602 on the 14th day of September, 2008 at 09:00 AM.

Failure to comply with this subpoena will render you liable to proceedings in the district court of the United States to enforce obedience to the requirements of this subpoena, and to punish default or disobedience.

Issued under authority of Sec. 506 of the Comprehensive Drug
Abuse Prevention and Control Act of 1970, Public Law No. 91-513
(21 U.S.C. 876)

## ORIGINAL

Signature: Alasac William J. Wanen

DAVID LORINO
ASAC

Issued this 2nd day of Sep 2008

08CR1052-FC-000114

SA 22

# Exhibit B

'15/2008 1:50 PM          18002234893          → 13126039923          

## Response Document

date: 9/15/2008 1:42:49 PM PDT
account_name: gslabs@hotmail.com

We have received your legal request for certain information related to the account identified. We understand and agree that the legal request is for purposes of compelling the disclosure of documents only, and not executing a search of the Microsoft premises or other property. After a reasonable and diligent search, if the account is valid and active, we have enclosed responsive documents in Microsoft's possession. If the account is not valid and inactive, we have provided a Certification of Absence of Business Records declaration for domestic law enforcement.

When an e-mail account has not been accessed for an extended period of time, all information specific to the e-mail account is deleted. In cases like these, we have provided the Registration information and available sampling of authentication IP history for the Microsoft Passport Network account or Windows Live ID.

Microsoft provides services for both free and paid accounts. We have no billing information for free accounts. We cannot verify the identifying information supplied by free account users. Therefore, the only registration or profile information that we possess for free accounts is the information given by the user at the time they register.

Generally the account name must be provided to search for information. In addition, message contents are only provided with a U.S. search warrant or its equivalent.

Within the available IP records, an entry could exist that belongs to Microsoft services due to internal configurations. 'Registered From IP' addresses or other IP addresses in the IP history that are in the blocks of 65.54.xx.xx (Hotmail) and 207.68.174.xx, 207.46.237.xx, 65.54.198.xx, 64.4.55.xx (Mobile) are from Microsoft-owned servers, but they do not provide any further information which relates to the user. If there is an entry of 1.1.1.1 or 2.2.2.2 in the 'History Info' the entry is a Microsoft system generated line item. The 1.1.1.1 and 2.2.2.2 entries are not generated by user activity. Specific questions can be directed to the Global Criminal Compliance Team.

Sincerely,

Custodian of Records
Global Criminal Compliance Team

## User Info

| Field | Value |
|---|---|
| Login | gslabs@hotmail.com |
| First Name | steve r |
| Last Name | wolinsky |
| State | Illinois |
| Zip | 60611 |
| Country | US |
| Timezone | GMT |
| Registered from IP | 165.124.58.234 |
| Date Registered {Pacific} | 6/22/2007 8:16:00 AM |
| Reply To Address | gslabs@hotmail.com |
| This Account Forwards to the Following Accounts | |
| Accounts Forwarding to This Account | |

08CR1052-FC-000140

SA 24

# Exhibit C

| # | ID | Date (Pacific) | Authentication |
|---|----|----|----|
| 1 | 168.124.58.234 | 6/22/2007 8:16:00 AM (PDT) | Initialize |
| 2 | 165.124.58.234 | 6/22/2007 8:16:04 AM (EDT) | parse |
| 3 | 24.15.185.7 | 7/6/2007 10:39:14 PM (PDT) | page |
| 4 | 24.15.180.222 | 7/5/2008 8:13:05 PM (PDT) | parse |
| 5 | 24.15.180.222 | 7/9/2008 7:16:30 AM (PDT) | page |
| 6 | 70.142.217.186 | 7/8/2008 3:39:39 PM (PDT) | page |
| 7 | 24.15.180.222 | 7/5/2008 9:30:18 PM (PDT) | page |
| 8 | 24.15.160.222 | 7/10/2008 6:17:34 PM (PDT) | page |
| 9 | 24.15.180.222 | 7/11/2008 9:23:54 PM (PDT) | page |
| 10 | 24.15.180.222 | 7/12/2008 9:19:46 AM (PDT) | page |
| 11 | 24.15.180.222 | 7/13/2008 7:30:00 AM (PDT) | page |
| 12 | 24.15.180.221 | 7/27/2008 10:46:14 AM (PDT) | page |
| 13 | 70.142.217.186 | 7/28/2008 5:05:43 PM (PDT) | page |
| 14 | 24.15.180.221 | 7/29/2008 12:31:50 PM (PDT) | page |
| 15 | 24.15.180.222 | 7/29/2008 2:21:43 PM (PDT) | page |
| 16 | 24.15.180.222 | 7/29/2008 8:12:29 PM (PDT) | page |
| 17 | 24.15.180.222 | 7/30/2008 7:51:53 PM (PDT) | page |
| 18 | 24.15.180.222 | 7/31/2008 2:26:22 PM (PDT) | page |
| 19 | 24.15.180.222 | 8/1/2008 6:29:31 PM (PDT) | page |
| 20 | 24.15.180.222 | 8/2/2008 2:59:45 PM (PDT) | page |
| 21 | 24.15.180.222 | 8/3/2008 8:08:38 PM (PDT) | page |
| 22 | 24.15.180.222 | 8/4/2008 12:58:22 PM (PDT) | page |
| 23 | 24.15.180.222 | 8/4/2008 1:51:42 PM (PDT) | page |
| 24 | 24.15.180.222 | 8/4/2008 7:21:48 PM (PDT) | page |
| 25 | 24.15.180.222 | 8/5/2008 1:42:39 PM (PDT) | page |
| 26 | 24.15.180.222 | 8/6/2008 1:01:22 PM (PDT) | page |
| 27 | 24.15.180.222 | 8/6/2008 6:56:38 PM (PDT) | page |
| 28 | 24.15.180.222 | 8/7/2008 8:22:43 AM (PDT) | page |
| 29 | 24.15.180.222 | 8/7/2008 9:06:25 PM (PDT) | page |
| 30 | 24.15.180.222 | 8/8/2008 7:35:32 AM (PDT) | page |
| 31 | 24.15.180.222 | 8/10/2008 7:23:38 PM (PDT) | page |
| 32 | 24.15.180.222 | 8/11/2008 9:22:47 PM (PDT) | page |
| 33 | 24.15.180.222 | 8/12/2008 8:32:19 AM (PDT) | page |
| 34 | 24.15.180.222 | 8/12/2008 7:53:21 AM (PDT) | page |
| 35 | 24.15.180.222 | 8/12/2008 8:02:20 PM (PDT) | page |
| 36 | 24.15.180.222 | 8/13/2008 6:46:56 PN (PDT) | page |
| 37 | 24.15.180.222 | 8/13/2008 8:19:53 PN (PDT) | page |
| 38 | 24.15.180.222 | 8/14/2008 8:16:41 AM (PDT) | page |
| 39 | 70.142.217.186 | 8/14/2008 8:21:43 AM (PDT) | page |
| 40 | 24.15.180.222 | 8/14/2008 3:56:57 PM (PDT) | page |
| 41 | 24.15.180.222 | 8/15/2008 12:01:45 PM (PDT) | page |
| 42 | 24.15.180.222 | 8/15/2008 9:18:57 PM (PDT) | page |
| 43 | 70.142.217.186 | 8/16/2008 9:31:39 AM (PDT) | page |
| 44 | 24.15.180.222 | 8/16/2008 12:25:37 PM (PDT) | page |
| 45 | 24.15.180.222 | 8/16/2008 2:04:45 PM (PDT) | page |
| 46 | 24.15.180.222 | 8/17/2008 9:29:11 AM (PDT) | page |
| 47 | 24.15.180.222 | 8/17/2008 5:46:26 PM (PDT) | page |
| 48 | 24.15.180.222 | 8/17/2008 7:35:18 PM (PDT) | page |
| 49 | 24.15.180.222 | 8/18/2008 9:33:15 AM (PDT) | page |
| 50 | 24.15.180.222 | 8/18/2008 1:31:04 PM (PDT) | page |
| 51 | 24.15.180.222 | 8/18/2008 10:28:15 PM (PDT) | page |
| 52 | 24.15.180.222 | 8/19/2008 7:38:42 PM (PDT) | page |
| 53 | 24.15.180.221 | 8/20/2008 8:16:21 AM (PDT) | page |
| 54 | 24.15.180.222 | 8/20/2008 5:10:43 PM (PDT) | page |
| 55 | 24.15.180.222 | 8/21/2008 8:47:44 PM (PDT) | page |
| 56 | 24.15.180.222 | 8/22/2008 4:17:28 PM (PDT) | page |

08CR1052-FC-000137
9/2/2008
SA 26

| 57 | 24.15.180.222 | 8/24/2008 9:31:49 AM (PDT) | pass |
| 58 | 24.15.180.222 | 8/25/2008 1:37:12 PM (PDT) | pass |
| 59 | 24.15.180.222 | 8/25/2008 8:24:09 PM (PDT) | pass |
| 60 | 24.15.180.222 | 8/26/2008 8:59:01 AM (PDT) | pass |
| 61 | 24.15.180.222 | 8/26/2008 8:07:42 PM (PDT) | pass |
| 62 | 24.15.180.222 | 8/27/2008 8:38:25 AM (PDT) | pass |
| 63 | 70.131.96.128 | 8/27/2008 2:26:04 PM (PDT) | pass |
| 64 | 24.15.180.222 | 8/27/2008 4:41:13 PM (PDT) | pass |
| 65 | 24.15.180.222 | 8/27/2008 5:23:54 PM (PDT) | pass |
| 66 | 24.15.180.222 | 8/27/2008 8:37:15 PM (PDT) | pass |
| 67 | 24.15.180.222 | 8/28/2008 7:18:22 AM (PDT) | pass |
| 68 | 24.15.180.222 | 8/28/2008 8:34:01 AM (PDT) | pass |
| 69 | 24.15.180.222 | 8/28/2008 8:07:54 PM (PDT) | pass |
| 70 | 70.131.96.128 | 8/29/2008 11:46:53 AM (PDT) | pass |
| 71 | 24.15.180.222 | 8/29/2008 1:08:58 PM (PDT) | pass |
| 72 | 24.15.180.222 | 8/31/2008 9:52:47 AM (PDT) | pass |
| 73 | 165.124.233.33 | 9/2/2008 1:28:27 PM (PDT) | pass |

15/2008 1:50 PM

| Init Locale | EN_US |
|---|---|

(Not every field may appear in your report. This data was provided to .s by the user, and Microsoft does not make any representations regarding its authenticity.)

| IP | Date (Pacific) | Authentication |
|---|---|---|
| 165.124.58.234 | 6/22/2007 8:16:00 AM (PDT) | initialize |
| 165.124.233.33 | 9/2/2008 1:28:27 PM (PDT) | pass |
| 165.124.233.33 | 9/3/2008 9:24:26 AM (PDT) | pass |
| 165.124.233.33 | 9/3/2008 1:36:37 PM (PDT) | pass |
| 24.15.180.222 | 9/3/2008 5:36:34 PM (PDT) | pass |
| 165.124.233.33 | 9/4/2008 9:39:21 AM (PDT) | pass |
| 165.124.233.33 | 9/4/2008 11:19:39 AM (PDT) | pass |
| 165.124.233.33 | 9/5/2008 8:49:54 AM (PDT) | pass |
| 165.124.233.33 | 9/5/2008 12:25:43 PM (PDT) | pass |
| 24.15.180.222 | 9/5/2008 9:17:52 PM (PDT) | pass |
| 24.15.180.222 | 9/6/2008 10:25:02 PM (PDT) | pass |
| 165.124.233.33 | 9/8/2008 8:49:04 AM (PDT) | pass |
| 165.124.233.33 | 9/8/2008 11:12:26 AM (PDT) | pass |
| 165.124.233.33 | 9/8/2008 1:30:25 PM (PDT) | pass |
| 165.124.233.33 | 9/9/2008 8:44:21 AM (PDT) | pass |
| 24.15.180.222 | 9/9/2008 6:48:24 PM (PDT) | pass |
| 165.124.233.33 | 9/10/2008 9:44:42 AM (PDT) | pass |
| 165.124.233.33 | 9/11/2008 9:11:07 AM (PDT) | pass |
| 165.124.233.33 | 9/12/2008 8:37:03 AM (PDT) | pass |
| 165.124.233.33 | 9/12/2008 10:58:35 AM (PDT) | pass |
| 165.124.233.33 | 9/12/2008 12:47:56 PM (PDT) | pass |
| 24.15.180.222 | 9/13/2008 6:29:44 AM (PDT) | pass |
| 24.15.180.222 | 9/13/2008 7:36:21 PM (PDT) | pass |
| 24.15.180.222 | 9/14/2008 8:05:02 AM (PDT) | pass |
| 165.124.233.33 | 9/15/2008 7:15:47 AM (PDT) | pass |
| 165.124.233.33 | 9/15/2008 11:26:37 AM (PDT) | pass |

# Exhibit D

## U.S. DEPARTMENT OF JUSTICE/DRUG ENFORCEMENT ADMINISTRATION
## SUBPOENA

In the matter of the investigation of
Case No: I1-08-0309
Subpoena No. I1-08-155030

**TO:** COMCAST IP SERVICES (INTERNET ACCOUNTS ONLY)
AT: 1800 BISHOPS GATE BLVD MT. LAUREL, NJ 8054

**PHONE:** 8563177214
**FAX:** 8563177319

**GREETING:** By the service of this subpoena upon you by SA Pat Bagley/ IA Trish Bombard who is authorized to serve it, you are hereby commanded and required to appear before SA Pat Bagley/ IA Trish Bombard, an officer of the Drug Enforcement Administration to give testimony and to bring with you and produce for examination the following books, records, and papers at the time and place hereinafter set forth:

Pursuant to an investigation of violations of 21 U.S.C. Section 801 et seq., please provide the following information. Pursuant to an investigation of violations of 21 U.S.C. 801 and as suthorized by the USA Patriot Act of 2001, it is requested that you furnish records related to IP Address 24.15.180.222 to include:Any and all e-mail addresses associated with this IP Address; a) customer name and other user name(s); b) addresses; c) records of session times and durations; d) length of service (including start date) and types of service used; e) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and f) means and source of payment for such service (including any credit card or bank account numbers).

Please do not disclose the existence of this request or investigation for an indefinite time period. Any such disclosure ɔuld impede the criminal investigation being conducted and interfere with the enforcement of the Controlled ɔubstances Act.

Please direct questions concerning this subpoena and/or responses to IA Patricia M. Bombard, 312-603-8014. In lieu of personal appearance, please email records to pbombard@chicago-hidta.org or fax to 312-603-9923

Place and time for appearance: At 69 W. WASHINGTON CHICAGO, IL 60602 on the 11th day of October, 2008 at 09:00 AM.

Failure to comply with this subpoena will render you liable to proceedings in the district court of the United States to enforce obedience to the requirements of this subpoena, and to punish default or disobedience.

Issued under authority of Sec. 506 of the Comprehensive Drug
Abuse Prevention and Control Act of 1970, Public Law No. 91-513
(21 U.S.C. 876)

**ATTESTED COPY**

Signature: _____

DAVID LORINO
ASAC

Issued this 30th day of Sep 2008

FORM DEA-79

# Exhibit E

# (comcast.

Comcast NE&TO
650 Centerton Road
Moorestown, NJ 08057
856.317.7272 Tel
856.317.7319 Fax

## CONFIDENTIAL

October 6, 2008

### VIA FACSIMILE

IA Patricia M. Bombard
DEA
69 W. Washington
Chicago, IL 60602
**Fax: 312-603-9923**

Re: Subpoena
Case #: I1-08-0309
Subpoena # I1-08-155030
Our File #: 7494114

Dear IA Bombard:

The Subpoena dated September 30, 2008 with respect to the above-referenced matter has been forwarded to the Legal Response Center for a reply. The Subpoena requests Comcast to produce certain subscriber account records pertaining to the following IP address: **24.15.180.222 used on September 27, 2008.**

Based on the information provided pursuant to the Subpoena, the subscriber information obtained has been provided below. **Comcast can only verify the following subscriber was assigned the IP address referenced above on September 27, 2008 beginning at 2:13:49.0 GMT.**

| | |
|---|---|
| Subscriber Name: | ANNA CAIRA |
| Service Address: | |
| Telephone #: | |
| Type of Service: | Residential High Speed Internet Service |
| Account Status: | Active |
| Account Created: | 08/02/2004 |
| Account Number: | 8798201200436940 |
| E-mail User Ids: | anna.ryan |
| | (all Comcast User ID's end in @comcast.net) |
| IP Assignment: | Dynamically Assigned |
| Current IP: | 24.15.180.222 as of October 6, 2008 |
| Method of Payment: | Statement sent to above address |
| | (No credit card numbers or bank account numbers on file) |

If you need further assistance please feel free to call (856) 317-7272.

Very Truly Yours,

Comcast Legal Response Center

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 1052-1 |
| vs. | ) | |
| | ) | Judge Rebecca Pallmeyer |
| FRANK CAIRA | ) | |

## GOVERNMENT'S RESPONSE TO MOTION TO QUASH

The United States of America, by and through its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, hereby respectfully submits the following response to defendant Frank Caira's Motion to Suppress Evidence Obtained Through Administrative Subpoena ("Motion," Docket #162).

## I.      INTRODUCTION

On May 27, 2009, defendant Frank Caira was charged in a four-count indictment with various narcotics offenses.  On June 17, 2009, defendant was charged in a five-count superseding indictment with one count of conspiring to manufacture, distribute, and possess with intent to distribute 3-4 Methylenedioxmethamphetamine (commonly known as "MDMA" or "ecstasy"), in violation of Title 21, United States Code, Section 846 (Count 1), one count of conspiring to manufacture and possess with intent to distribute marijuana, in violation of Title 21, United States Code, Section 846 (Count 2), and two counts of possessing with intent to distribute marijuana, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2 (Counts 3 and 4).

On February 22, 2012, defendant filed a motion to suppress evidence that the government obtained via administrative subpoenas.  Docket #162.

## II.    __BACKGROUND__

Prior to the issuance of the administrative subpoenas at issue here, defendant had multiple contacts via email and telephone with law-enforcement agents.  As described in prior filings, a person using the email address gslabs@hotmail.com (the "Target Email Address") repeatedly emailed a website controlled by the Drug Enforcement Administration and based in Vietnam to import safrole to an address in Chicago.  In these emails, defendant provided (1) his name as either "Jeff Hurst" or "Steve," (2) indicated that the shipping address would be 5873 N. Harlem Avenue, Chicago, and (3) indicated that his telephone number was 847-560-4170.

On or about September 2, 2008, agents requested information by administrative subpoena from Microsoft Corporation regarding the subscriber information and account login histories for the Target Email Address.  Microsoft provided the login history, which indicated that the logins for the Target Email Address were via IP addresses[1] assigned to Northwestern University and Comcast. According to Microsoft, the subscriber of the account was Individual A, whom agents later learned was one of defendant's supervisors at Northwestern University.

According to Comcast's response, the subscriber information for the IP address that was used to login to the Target Email Address was the defendant's wife at the defendant's address.  Agents

---

[1]    An IP address provides a unique locator, making it possible for data to be transferred between computers. Specifically, an IP address is a series of four numbers separated by periods, and each of the four numbers is a whole number between 0 and 255. An example of an IP address is 192.168.10.102. Each time an individual accesses the Internet, the computer from which that individual initiates access is assigned an IP address. A central authority provides each Internet Service Provider (ISP) a limited block of IP addresses for use by that ISP's customers or subscribers. Many ISPs employ dynamic IP addressing; in other words, they allocate an unused IP address each time a customer or subscriber accesses the Internet. The ISP logs the date, time, and duration of the Internet session for each IP address and can identify the user of that IP address for a particular session from these records. Typically, home users will be assigned an IP address from a pool of IP addresses for the duration of a session.

SA 34

also determined that the defendant lived at the same address and worked at Northwestern University.

## III.   <u>ARGUMENT</u>

Defendant did not have a reasonable expectation of privacy in Microsoft's records regarding his e-mail account or in the records collecting the IP addresses that he used to access his e-mail, and thus the DEA's use of a subpoena to obtain such records did not violate defendant's Fourth Amendment rights. At least three appellate courts have rejected the same argument that defendant makes in his motion.

In *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008), the Ninth Circuit found that e-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit "because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information. Like telephone numbers, which provide instructions to the 'switching equipment that processed those numbers,' e-mail to/from addresses and IP addresses are not merely passively conveyed through third party equipment, but rather are voluntarily turned over in order to direct the third party's servers."

Similarly, in *United States v. Christie*, 624 F.3d 558 (3rd Cir. 2010), the Third Circuit found that a defendant had no reasonable expectation of privacy in his subscriber information or in his IP address because such information was "conveyed to and, indeed, from third parties, including ISPs." 624 F.3d at 574. In *United States v. Beckett*, 2010 U.S. App. LEXIS 4989 (11th Cir. 2010), the Eleventh Circuit also found that a defendant did not have a reasonable expectation of privacy in the IP address information that the government obtained via information requests, since "[i]t is unreasonable for [the defendant] to have been unaware that such information was being transmitted

to the ISPs and phone companies and so he 'assumed the risk that the company would reveal to police the [information].'" Id. at *10 (citation omitted).

Defendant argues that he had an expectation of privacy in third-party records that could be used to determine his location at particular times in the past. That argument was recently rejected in *In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, 2011 U.S. Dist. LEXIS 130171 (E.D. Va. November 10, 2011) (the "Twitter case"). In that case, petitioners who were users of Twitter argued that they had a reasonable expectation of privacy in the IP address information collected by Twitter and sought by the government. The district court there rejected petitioners' arguments. First, the district court found that petitioners had no reasonable expectation of privacy in the IP address information collected by Twitter, even if that information could be used to determine a person's physical location at particular points in time. 2011 U.S. Dist. LEXIS at *48. Second, the district court found that, even if petitioners had a reasonable expectation of privacy in the IP address information collected by Twitter, they "voluntarily relinquished any reasonable expectation of privacy" by accessing Twitter, which indicated "an intention to relinquish control of whatever information would be necessary to complete their communication." *Id*. at *49, 54.

As a result, the district court found that the government's effort to obtain the IP addresses at issue in the Twitter case could not constitute a search in violation of the Fourth Amendment, and that the petitioners did not have Fourth Amendment standing to challenge the government's effort. Id. at *65-65.[2]

---

[2]     The district court in the Twitter case also found that even if petitioners had a reasonable expectation of privacy in their IP address information, that expectation was lessened given petitioners' consent to Twitter's Terms of Service and Privacy Policy, which stated that Twitter collected information such as IP addresses and may disclose such information in certain circumstances, including to comply with a legal request. Id. at *66-67. Microsoft's privacy policy

Just as the courts found in *Forrester*, *Christie*, *Beckett*, and the Twitter case, defendant here had no reasonable expectation of privacy in the IP addresses that he used to access Microsoft's Hotmail service. Defendant does not address any of these cases in his motion. Instead, he cites cases that involve very different scenarios for purposes of Fourth Amendment analysis here. *United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010), involved the government obtaining the contents of emails without a warrant. *In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't*, 620 F.3d 304 (3rd Cir. 2010), involved a request to obtain cell site location information from a phone company. *United States v. Jones*, 132 S. Ct. 945 (2012) involved the implanting of a GPS device on a car without a warrant. None of these cases are analogous to the situation here. In this case, the DEA simply used administrative subpoenas to obtain third-party records containing information whose disclosure was specifically authorized by statute, and later sought search warrants to obtain the contents of defendant's emails.

Defendant also cites 18 U.S.C. §2703(c) in his motion, arguing that it prohibits the government from obtaining a history of the IP addresses used to access an e-mail account without a warrant. But defendant's reading of the statute is incorrect. 18 U.S.C. § 2703(c)(2) specifically authorizes the government to use an administrative subpoena to obtain the "(A) name; (B) address; (C) ... *records of session times and durations*; (D) telephone or instrument number or other subscriber number or identity, *including any temporarily assigned network address*; and (E) means and source of payment for such service" (emphases added) of a subscriber or customer of an

---

(online at http://privacy.microsoft.com/en-us/fullnotice.mspx) has similar language, advising users that it collects information such as their IP addresses and that it may disclose that information to respond to lawful requests. It is defendant's burden to show that he had a reasonable expectation of privacy, and he has failed to do so here.

5

"electronic communication service or remote computing service." Defendant's argument that 18 U.S.C. § 2703 is limited to "basic subscriber information" has no support in the statute, and ignores the sections of the statute explicitly authorizing the disclosure of the kind of network information at issue here. In fact, Section 2703 is consistent with defendant having no reasonable expectation of privacy in the Microsoft and Comcast records at issue here.

Accordingly, defendant has no standing to challenge Microsoft's and Comcast's responses to the DEA's administrative subpoenas, there was no search in violation of the Fourth Amendment, and defendant's motion should be denied.

## IV.    **CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to suppress.

<div style="margin-left:40%">

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

</div>

by:    /s/ Stephen Chahn Lee
STEPHEN CHAHN LEE
YASMIN N. BEST
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300

DATED: April 23, 2012

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 1052 |
| v. | ) | |
| | ) | Hon. Rebecca R. Pallmeyer |
| FRANK CAIRA | ) | |

## REPLY TO GOVERNMENT RESPONSE TO DEFENDANT'S MOTION TO SUPRESS EVIDENCE OBTAINED THROUGH ADMINISTRATIVE SUBPOENA

COMES NOW the defendant, FRANK CAIRA ("Mr. Caira"), by and through his attorneys, Beau B. Brindley and Joshua Jones, and replies to the government's response to his motion to suppress:

The government criticizes Mr. Caira for his reliance on cases dealing with obtaining the contents of emails, obtaining cell site information, and obtaining location-monitoring information via a GPS device. According to the government, this case is different because "the DEA simply used administrative subpoenas to obtain third-party records…." Gov't Resp. at 5. But the government fails to acknowledge that that is precisely what the government did in the cases the government chides Mr. Caira for citing. Cell site location information is contained in "third-party records." The government's argument elevates form over substance. But recent Fourth Amendment jurisprudence acknowledges the special difficulties presented by the existence of information in electronic formats. It is not sufficient to simply state that the information is contained in third-party records and then go about business as usual. The contents of e-mails are contained in third-party records. Cell site information is contained in third party records. Detailed physical positioning information is contained in third-party GPS records. As recent cases acknowledge, the Fourth Amendment is not so feeble a protection of privacy rights

1

that it is rendered ineffectual by the existence of "third party records." A majority[1] of justices in *Jones v. United States* believed that "longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy." 565 U.S. ___, *3 (2012) (Sotomayor, J., concurring) (*quoting* Alito, Ginsberg, Breyer, and Kagan, JJ., concurring). Thus, challenges to information that simply happens to be in the hands of a corporation may not simply be swept under the rug by invoking the phrase "third-party records."

The cases the government relies upon either do not address the situation presented here or actually lend support to the proposition that only basic subscriber information may be obtained in the absence of a warrant. The government relies on *United States v. Forrester*, a Ninth Circuit case which held that the government's use of computer monitoring techniques to obtain information regarding a defendant's internet activity was permissible. 512 F.3d 500 (9th Cir. 2008). First, in *Forrester*, "the government applied for and received court permission" to install the "mirror port" that was used to monitor the computer activity. 512 F.3d at 505. Thus, the government activity was not analogous to the government conduct here: the use of administrative subpoenas that operate in complete secrecy with no judicial oversight whatsoever.

Moreover, *Forrester* involved active surveillance. It was not a retroactive attempt to reconstruct a person's actions and whereabouts. It is similar to the important distinction between following a car around on public streets to learn its whereabouts and using GPS to track the car's location. As was noted recently in *Jones*, that kind of tracking can constitute an invasion of privacy even where the use of traditional forms of surveillance to accomplish the same goals

---

[1] Justice Alito filed a concurring opinion on behalf of himself, Justice Ginsberg, Justice Breyer, and Justice Kagan. Justice Sotomayor filed a separate concurrence in which she state that she agreed with this statement. Thus, a majority of the Supreme Court has found that long-term GPS monitoring is a search in most cases.

would not. But, at bottom, the holding in *Forrester* was quite limited: "our holding extends only to these particular techniques and does not imply that more intrusive techniques or techniques that reveal more content information are also constitutionally identical to the use of a pen register." *Forrester*, 512 F.3d at 511. Since the government here did not employ a court approved "mirror port" *Forrester* clearly does not control.

Next, the government points to the Third Circuit case, *United States v. Christie*, 624 F.3d 558 (3d Cir. 2010). In *Christie*, the Third Circuit held that a person does not have a reasonable expectation of privacy in "*basic subscriber information.*" *Id.* at 574. In this case, we are not dealing with basic subscriber information. The only way the government was able to ferret out Mr. Caira's wife's home address was by obtaining a complete history of IP addresses that had accessed the e-mail account in question. The IP address in question was not the IP address under which the email account was registered. The IP address connected to the home address of Mr. Caira's wife was only found by going beyond "subscriber information" and actually obtaining the records of every IP address that ever accessed the email account. That is, in no sense, basic subscriber information. Instead, that is an invasive review of very location from which the email account was ever accessed.

The government also cites *United States v. Beckett*, an unpublished per curiam disposition from the Eleventh Circuit. *Beckett* establishes another distinction that is important here: e-mail service providers are different from Internet service providers ("ISP"). The vast majority of the cases in this area deal with administrative subpoenas served on ISPs. Internet service providers are the companies that assign the IP address to Internet users. It is a necessary and integral part of the service that they provide. Thus, the basic subscriber information for an ISP would include the IP addresses assigned to a person's account. An e-mail service provider

3

does not assign IP addresses at all. It provides secure access to e-mail accounts where customers can send and receive private messages.

In *Beckett*, the court noted that the information that the government obtained from an ISP was information "that is necessary for the ISPs and phone companies to perform their services." 2010 WL 776049 at **4. The administrative subpoena issued to Microsoft in this case was issued to Microsoft in its capacity as an e-mail provider, not an ISP. The government issued an independent subpoena to Comcast, which was the ISP. The detailed log information necessary to identify the address of Mr. Caira's wife, which was turned over by Microsoft, was not information "that is necessary for [Microsoft] to perform [its] services." *Id.* It was, instead, detailed information collected by an email provider regarding all locations where the private email account was accessed.

The mere fact that a company happens to have information does not render it basic subscriber information in which a person has no expectation of privacy. After all, Internet companies have access to an extraordinary amount of information. It is for this reason that "analogizing computers to other physical objects when applying Fourth Amendment law is not an exact fit because computers hold so much personal and sensitive information touching on many private aspects of life . . . ." *United States v. Flores-Lopez*, 670 F.3d 803, 805 (7th Cir. 2012) (*citing United States v. Lucas*, 640 F.3d 168, 178 (6th Cir. 2011)). If the mere fact that a company's possession of particular information leaves that information outside of the Fourth Amendment's protection, there is little that remains private in this world. Love letters are discoverable since the contents of emails are in the possession of e-mail providers. Information regarding sexual preferences is no longer private because such information is housed on websites like Match.com and OkCupid.com. As was recently noted in *Flores-Lopez*, there are now

4

programs that allow people to remotely access cameras in their home. *Id.* at 807. Does the fact that this information is in the possession of a company render the historical idea that the home is the epicenter of the right to privacy a nullity? That is where the government's logic leads.

Mr. Caira asks this Court to take a more nuanced view, a view supported by both precedent and common sense. Governmental entities can obtain basic subscriber information from Internet service providers and e-mail providers. But the information sought must actually be basic subscriber information. A detailed log of every location that has ever accessed in account is not basic subscriber information. It is an invasive and detailed accounting of a person's private email activity. This is consistent with the holding in each of the cases cited by the government. See *United States v. Bynum*, 604 F.3d 161, 164 (4th Cir. 2010) (finding no expectation of privacy in "internet and phone 'subscriber information'- *i.e.*, his name, email address, telephone number, and physical address"). The government has offered no argument to establish why the detailed history of every location where the user accessed private email that was obtained in this case constitutes *basic* subscriber information.

The government also accuses Mr. Caira of misreading 18 U.S.C. §2703. The government argues that §2703(c) authorizes the government to obtain a history of IP addresses used to access an e-mail account. But a quick look at the portions of the statute the government cites for this proposition demonstrates that the statute is not so broad. First, the government cites to the section of the statute that authorizes the government to obtain "records of session times and durations." 18 U.S.C. §2703(c)(2)(C). Session times and durations are not IP addresses. Session times and durations do not potentially reveal extensive physical location data about the places where someone accesses private email. The information obtained in this case went beyond "records of session times and durations."

5

Next the government refers the Court to §2703(c)(2)(E), which states "[a] provider of electronic communication service or remote computing service shall disclose to a governmental entity the telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address." This section obviously refers to the specific subscriber number that is assigned to the individual when using the service. It does not require or permit disclosure of a running history of every location from which email has ever been accessed.

The structure of the statute lends further support to Mr. Caira's reading. The section the government cites is a list of exceptions to a general rule. The statute indicates that "[a] governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only" under the listed circumstances. The government's reading of the statute renders this section superfluous. The statute already indicates that governmental entities need a warrant before obtaining communication "contents." Yet, the government's reading (indeed, its entire theory of privacy concerns in this area) allows the government to obtain everything in the possession of the electronic communication other than "content." If that were the case, the government would never need a warrant to obtain any information other than "content." Yet, §2703(c) would serve no purpose whatsoever unless there were some information besides "content" that the government could not obtain via the expedience of an administrative subpoena. This demonstrates the government's overly simplistic approach to this kind of information. The kind of detailed login history obtained here is not basic subscriber information. To the extent the government urges a contrary construction of §2703, such a construction is inconsistent with the Fourth Amendment and unsupported by §2703.

6

Finally, the government cites to the Microsoft Privacy Statement in an attempt to diminish Mr. Caira's expectation of privacy. Nothing in the Privacy Statement informs Mr. Caira that his private information, including logs of every place from which he has accessed an e-mail account, would be turned over to law enforcement without a warrant or any justification whatsoever. The statement first informs Mr. Caira that "[e]xcept as described in this statement, we will not disclose your personal information outside of Microsoft and its controlled subsidiaries and affiliates without your consent." He was also told that "Microsoft is committed to protecting the security of your personal information." He is then told that Microsoft may disclose information to "comply with the law or respond to lawful requests or legal process." As has been noted, the government's attempt to obtain detailed login history showing the physical location of every place where a person accessed private email was not a lawful request. The Privacy Statement had the cumulative effect of increasing Mr. Caira's subjective expectation of privacy. It certainly did not suggest that data disclosing the physical location of every place where he accessed private email would ever be disclosed absent a warrant. This is all, of course, presuming that he read the lengthy, frequently revised document. Ultimately, the government cannot escape the fact that it obtained and relied upon information that went beyond basic subscriber information and thus violated Mr. Caira's reasonable expectation of privacy and his Fourth Amendment rights.

WHEREFORE, Mr. Caira respectfully asks this Court exclude all evidence gathered as a result of the execution of the administrative subpoenas, including any fruits of that evidence obtained at a later point in the investigation.

Respectfully Submitted by:

s/ Beau B. Brindley
**Attorney for Defendant,**
**FRANK CAIRA**

LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd, Suite 1410
Chicago, Illinois  60604
(312) 765-8878

SA 46

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No.  08 CR 1052-1 |
| | ) | |
| FRANK CAIRA | ) | Judge Rebecca R. Pallmeyer |

**ORDER**

Defendant Frank Caira is charged with various drug offenses, including one count of conspiring to manufacture and distribute 3-4 Methylene dioxymethamphetamine ("MDMA" or "Ecstasy").  In support of these charges, the government intends to introduce certain evidence it obtained in response to administrative subpoenas served on Microsoft Corporation regarding subscriber information and "account login histories" for a particular e-mail address.  Microsoft's responses led to incriminating evidence which Caira now moves to suppress, arguing that the subpoenas constituted a warrantless search, prohibited by the Fourth Amendment.  For the reasons stated here, Caira's motion is denied.

The facts are reasonably straightforward.  Government agents knew that someone using the "gslabs@hotmail.com" account and an 847-xxx-xxxx telephone number, and calling himself "Jeff Hurst," was making efforts to import safrole, a "list 1" chemical, and have it shipped to a Harlem Avenue address in Chicago.  Neither Hurst, nor any entity known as "GS Labs," was legally authorized to import safrole, nor was the Harlem Avenue address associated with any such authorized person.  Agents therefore served an administrative subpoena on Microsoft Corporation, seeking disclosure of subscriber information and login histories for the "gslabs" e-mail address.

In response, Microsoft Corporation provided "user information" associated with the "gslabs@hotmail.com" address, including information showing a number of IP addresses that had been used to access that address.  The government followed up by issuing a subpoena to Comcast IP Services, seeking information about the IP addresses that had been used to access the "gslabs"

1

SA 47

hotmail account. The response to that subpoena led the government to Defendant Frank Caira's residence, where further investigation, including a "trash pull," generated incriminating evidence.

Defendant seeks to suppress that evidence. He argues that the government's use of administrative subpoenas (rather than a search warrant) to obtain evidence constitutes a "search" as that term is defined in *Katz v. United States*, 389 U.S. 347, 353 (1967). In *Katz*, the Court held that an enclosed telephone booth is, like a home, an area where a person has a constitutionally protected expectation of privacy; accordingly, the government's unwarranted recording of defendant's conversation in a phone booth violated the Fourth Amendment. *Katz* establishes that government conduct is a search when an individual has a subjective expectation of privacy in the materials seized and that expectation is accepted as a reasonable one. *Id.* at 361 (Harlan, J., concurring).

Defendant insists the test is met here, but the court is less certain. First, though Mr. Caira presumably expected that the *contents* of his communications were private matters, the cases he cites do not obviously support the proposition that he had a subjective expectation of privacy "in the detailed history of locations from which he accessed his personal e-mail account." (Motion to Suppress Evidence Obtained Through Administrative Subpoena, at 6.) In *City of Ontario v. Quon*, 130 S.Ct 2619, 2630 (2010), the Supreme Court recognized that cell phone and text communication have become pervasive and perhaps even essential for self-expression–a fact that could militate in favor of recognizing an expectation of privacy in text communications using employer-owned equipment. That observation says nothing about any expectation that the location from which communications are made would remain confidential. *United States v. Warshak*, 631 F.3d 266, 284 (6th Cir. 2010), similarly, involved privacy interests in the content of electronic communication–not the location(s) from which those communications were made. Defendant is correct that disclosure of IP locations can and, in this case, did lead to the discovery of his home address; but the Fourth Amendment protects against warrantless entry into a home, not warrantless determination of the

2

home's location.

As the government pointed out in response to this motion, three Courts of Appeals have ruled against defendants who challenged warrantless access to e-mail account records and records of the IP addresses used to access e-mail. In *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008), as here, defendant was charged with offenses related to an Ecstasy-manufacturing operation. The government had used a "mirror port"–a device analogous to a "pen register"–to identify the to/from addresses of the suspect's e-mail messages as well as the IP addresses of the website he had visited. In ruling that admission of evidence obtained from the device at issue was constitutionally permissible, the Court of Appeals noted that the content of the messages was not disclosed and reasoned that a user has no greater privacy interest in e-mail and IP addresses than he would have in telephone numbers or a return address label. 512 F.3d at 510-11. Defendant Caira attempts to distinguish *Forrester* on the ground that a court-approved "mirror port" was not involved here. But *Forrester* did not suggest that a probable-cause finding was necessary for the surveillance at issue, and in this court's view, "active surveillance" (as Caira characterizes the *Forrester* activity) is more intrusive than a retroactive review of third-party records.

More directly relevant is *United States v. Christie*, 624 F.3d 558 (3rd Cir. 2010), a child pornography prosecution in which the FBI obtained IP address information concerning defendant Christie from a third party. The Third Circuit was untroubled by Christie's Fourth Amendment objection, which rested on what the court characterized as "the flawed premise that he possessed a reasonable expectation of privacy in his IP address." 624 F.3d at 573. Such information, the Christie court observed, is voluntarily provided to third parties and therefore exempt from Fourth Amendment analysis. 624 F.3d at 574. Defendant Caira urges that the only information at issue in *Christie* is what Caira refers to as "basic subscriber information," (Reply to Government Response, at 3), but as the *Christie* court described the investigation involved in that case, it was as invasive as the one at issue here: the FBI sought and obtained "administrator-level access" to

3

a password-protected website, and was able to use that access to monitor IP addresses, ultimately identifying forty users whose identity the agent acquired from the Internet Service Providers. *Id.* at 563.

Caira's attempt to distinguish the third case on which the government relies similarly eludes this court. *United States v. Beckett*, 369 F. App'x. 52 (11th Cir. 2010) was an appeal from a child pornography conviction in which law enforcement had obtained "subscriber information" by way of letter requests. Defendant Beckett challenged that procedure as a violation of the Electronic Communications Privacy Act ("ECPA"), which provides for law enforcement access to such information pursuant to a warrant, a court order, consent, or an administrative subpoena. 18 U.S.C. § 2703(c). Unlike here, where agents issued a subpoena, authorities in the *Beckett* case took none of the statutorily-authorized steps. Affirming the conviction in a *per curiam* opinion, the Eleventh Circuit brushed off the evidentiary objection, observing that violation of the ECPA does not support suppression of the evidence, and that Beckett had no expectation of privacy in any information obtained from ISPs and phone companies. The court noted that investigators had no access to the content of the communications. The same is true here: Microsoft and Comcast's subpoena responses contained no information concerning the contents of any of Caira's communications.[1]

Caira attempts to distinguish *Beckett* by drawing a line between e-mail service providers and Internet service providers. According to Caira, the log information that Microsoft turned over to the government in response to a subpoena was not "necessary" for Microsoft to perform its e-mail service. The court is uncertain that the information Microsoft collected was not "necessary" to providing services; even if Caira is correct about this, however, it does not follow that Caira had a legitimate expectation of privacy in all information not immediately necessary to the provision of

---

[1] The content-free nature of the disclosures blunts Caira's concern that denying his motion opens the door to discovery of "love letters" and "[i]nformation regarding sexual preferences." Reply, at 4.

4

services.  Although his motion is grounded in the Fourth Amendment, Caira suggests his view is supported by the structure of the ECPA itself: The Act provides for disclosure of the *contents* of electronic communications only pursuant to a warrant or consent.  18 U.S.C. § 2703(b).  In response to an administrative subpoena, the government is entitled only to the user's name, address, telephone connection records, or "records of session times and durations," length and type of services utilized, and the "telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address."  18 U.S.C. § 2703(c).  As the court understands the procedure in this case, this information is precisely the type obtained here; Comcast turned over records of the IP addresses from which the user accessed the "gslabs" e-mail address.  Caira believes the data obtained by the government exceeds what is contemplated by the statute because Comcast retained records going back in time for several months.  Nothing about the statute imposes temporal limitations on the discoverable records, however, or otherwise demonstrates that a user has a subjective expectation of privacy in such historical records.

Indeed, federal courts that have addressed the issue have routinely held that "subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation."  *United States v. Perrine*, 518 F.3d 1196, 1204 (10th Cir. 2008 ) (collecting cases).  Caira urges that the issue must be revisited in light of the Supreme Court's recent decision in *United States v. Jones*, 132 S.Ct. 945 (2012).   There, the Court held that a search warrant is required before law enforcement officers may physically attach a tracking device to an individual's vehicle.  The majority opinion rested on a trespass theory, but concurring opinions did suggest that "long-term monitoring" of vehicle movements may implicate reasonable expectations of privacy.  132 S.Ct. at 958 (Alito, J., concurring).  Caira believes Justice Alito's observation also means that records of past movements are presumptively confidential.  Whatever the merits of that argument, the observation is not a basis, at this stage, to suppress the evidence at issue in this case.  *See United States v. Graham*, No. RDB-11-0094, ___F.Supp.2d ___, 2012 WL 691531 (D. Md.  Mar.

1, 2012.)

Caira's motion [162] is denied.

ENTER:

Dated:  June 22, 2012

REBECCA R. PALLMEYER
United States District Judge

SA 52